815 P.2d 7

**In re the MARRIAGE OF Colleen PACIFIC, f/k/a Colleen Beatty, Petitioner–Appellee,**

**and**

**Quentin Winston Beatty, Respondent–Appellant.**

**No. 1 CA–CV 89–074.**

Court of Appeals of Arizona, Division 1, Department D.

July 18, 1991.

461

Colleen Pacific, in pro. per.

Andrew G. Galasky, P.C. by Andrew G. Galasky and Elmer D. Parker, II, Tempe, former attys. for petitioner-appellee.

Smith & Feola, P.C. by Mark J. Robens and Fox & Fox by John R. Fox, Phoenix, for respondent-appellant.

## OPINION

FIDEL, Judge.

In a modification hearing two years after the parties dissolved their marriage, the trial court revised the parties' child custody arrangements and ordered the father to pay the mother child support and attorneys' fees. We now set aside the latter, monetary, orders. We find that the trial court miscalculated the income that each party had available for child support and attorneys' fees by including one half of the income of each party's current spouse.

### FACTUAL AND PROCEDURAL BACKGROUND

Quentin Winston Beatty ("Father") and Colleen Pacific, formerly Colleen Beatty ("Mother"), were married in 1976 and di-

vorced on December 17, 1985. Two children were born of their marriage.

At dissolution, the parties stipulated concerning custody and child support: Mother would have physical custody on weekdays, Father on weekends; vacations and holidays would be cooperatively arranged. Neither party would pay the other child support, each would provide for "ordinary needs" when in physical custody of the children, and "extraordinary expenses" would be allocated by later agreement as the need arose. After entry of the decree, both parties remarried.

In November of 1987, Mother petitioned for modification, asking that custody be modified and that Father pay child support in accordance with the Arizona Child Support Guidelines.[1] Mother also sought attorneys' fees and costs pursuant to Ariz. Rev. Stat. Ann. § 25–324 (1976). The only issues pertinent to this appeal are those concerning child support and attorneys' fees.

When the decree was entered in 1985, Mother's monthly income was $1,292; by the modification hearing in the spring of 1988, her income had declined to approximately $375 per month. Mother explained that she had reduced her hours of employment to complete her nursing studies; and though she anticipated receiving her degree in December 1988, she intended to continue to defer full-time employment because she had a small child—a daughter born of her second marriage—at home.

Father had also reduced his earnings since the decree. In December of 1985, he had earned approximately $1,400 per month; at the time of hearing, he was a full-time student pursuing a teaching degree and otherwise unemployed. However, Father anticipated an offer of employment as a teacher beginning in the 1988 fall term at a salary of approximately $20,000 per year.

Both parties' current spouses were fully employed. Mother's spouse had earnings of approximately $2,340 per month. Father's spouse earned approximately $39,000 per year and maintained a bank account with a balance over $66,000. Father testified, however, that, in accordance with a prenuptial agreement, all of his wife's income and assets were her separate property because she was supporting two children of her own. He added that, although his wife was paying all of the family's living expenses, certain of those payments constituted loans to him and were evidenced by promissory notes. Specifically, Father testified that his wife had loaned him money to pay debts from his previous marriage and a portion of his college tuition. She continued to loan him money to pay a portion of his living expenses.

In its ultimate ruling on the issue of child support, the trial court attributed to each parent one-half of the income of that parent's current spouse. The court explained:

THE COURT FURTHER FINDS ... that each parent has received and will continue to receive a specific financial benefit as a result of their marriage to third persons and expense sharing with those persons.

THE COURT FINDS that the benefit equals one-half of the income of each new spouse and therefore the Court finds this benefit shall be considered by the Court in determining the child support amount under the guidelines.

The court calculated Father's income to be $2,775 per month, attributing $1,150 to Father's anticipated earnings and the remaining $1,625 to his marital community half-interest in his wife's income. The court determined Mother's income the same way, attributing $375 per month to Mother's earnings and $1,171 to her undivided one-half interest in her husband's income. The court deducted $150 per month from Mother's income for support of

<hr/>

**1.** We review the trial court's modification order under the October 1, 1987, guidelines that applied at the time of the hearing. Since that time, the Arizona Supreme Court has adopted revised guidelines, effective December 31, 1989, and a more current revision effort is underway. The most current guidelines will apply on remand, as we discuss in the body of the opinion. We will point out differences between the 1987 and 1989 guidelines where they exist.

her youngest child, yielding $1,396 per month.

Combining the adjusted gross income of both parents, the court arrived at a figure of $4,171. From this figure and the 1987 guidelines, the court derived a basic support obligation of $850 per month and assessed Father's and Mother's respective proportionate shares as 67 and 33 percent. The court ordered Father to pay Mother $561 per month for child support[2] and $6,000 for her attorneys' fees. The court also ordered Father to pay a reduced sum of $280 for June and July each year, the months when the children would reside with him.

## CHILD SUPPORT

█ Child support awards are highly discretionary, and appellate courts review them deferentially. *In re Marriage of Berger*, 140 Ariz. 156, 680 P.2d 1217 (App. 1983). We conclude, however, that the trial court abused its substantial discretion in this case.

### A. *Spouses' Incomes*

█ Father argues that the trial court erred by including in its calculation of each parent's gross income one-half of the income of that parent's current spouse. We agree.

We first consider Ariz. Rev. Stat. Ann. § 25–215(B)(1976), which provides:

> The community property is liable for the premarital separate debts or other liabilities of a spouse, incurred after Sep-

tember 1, 1973 but only to the extent of the value of that spouse's contribution to the community property which would have been such spouse's separate property if single.

In *Hines v. Hines*, this court rejected a mother's claim for assignment of a portion of the father's current spouse's wages, holding that child support is a "premarital separate debt" within the meaning of § 25–215(B). 146 Ariz. 565, 567, 707 P.2d 969, 971 (App.1985). *Hines* establishes that § 25–215 protects the wages of both Father's and Mother's current spouses and that each community is only liable for the "premarital separate debt" of child support to the extent of Father's and Mother's contributions.

In this case, however, Mother does not seek a wage assignment against Father's spouse; she seeks rather to have half his spouse's wages treated as Father's income in the computation of earnings available for support. Mother argues further that the trial court's method of calculating income available for child support was authorized by section B.4.f of the 1987 Guidelines, which provided that, in determining gross income, "[t]he court may take into account the benefits a parent derives from remarriage, expense-sharing, or other source."[3]

Child support guidelines are not a source of law, but a source of guidance to the trial courts in the application of the law embodied in the statutes and recorded cases. *See* Ariz. Rev. Stat. Ann. § 25–320(A) (Supp. 1990);[4] *Schenek v. Schenek*, 161 Ariz. 580,

---

**2.** Mother's initial worksheet requested $583 per month, and the trial court adopted that worksheet when it determined Father's basic child support obligation. The trial court also noted, however, that it was awarding $561 to Mother. Father moved to amend the findings of fact. Among his requests was that the court credit him for expenses he incurs directly while the children are in his care. The court denied Father's motion to amend, but credited Father with a sum of $22 per month, apparently deducting $22 from Mother's child support computation of $583 to match the previous order of $561. It appears that the court thus corrected a technical inconsistency in the record stemming from its earlier adoption of Mother's worksheet.

**3.** This section was deleted from the 1989 Guidelines and replaced with the following language in section 5.f: "Income of a parent's new spouse is not treated as income of that parent under these guidelines."

**4.** Section 25–320(A) states in part:
The supreme court shall establish guidelines for determining the amount of child support. The amount resulting from application of these guidelines shall be the amount of child support ordered unless a written finding is made ... that application of the guidelines would be inappropriate or unjust in a particular case.... The supreme court shall review the guidelines at least once every four years to ensure that their application results in the

581, 780 P.2d 413, 414 (App.1989). Approaching section B.4.f in this spirit, we do not find that it supports the court's award. It is one thing to consider the *benefits* that a parent derives from remarriage or expense-sharing. It is another to automatically treat one-half of that parent's spouse's income as the parent's own. In this case, the court was entitled to consider the extent to which Father's living expenses were defrayed by his wife's income and to assess the likelihood that Father would be required to repay his wife. Such determinations required fact-finding, however, and were not accomplished by the trial court's arithmetic income-splitting approach.

*Fought v. Fought,* 94 Ariz. 187, 382 P.2d 667 (1963), a pre-section 25–215(B) case cited by Mother, does not contradict this view. There, reviewing a father's petition to reduce his child support, our supreme court directed the trial court to take the mother's remarriage "into consideration in weighing the equities of the situation," and the court observed that the mother had a "community property interest in the income of the husband, which could also be applied to the welfare of the child." 94 Ariz. at 188–89, 382 P.2d at 668. We do not interpret *Fought* to hold that a parent's half-share of a new spouse's community earnings is income to the parent for the purpose of calculating child support; we interpret *Fought* rather to recognize, as the 1987 Guidelines later recognized, that a new spouse's earnings are a source to defray expenses.

The 1989 Guidelines are more specific on this point; section 5.f states: "Income of a parent's new spouse is not treated as income of that parent under these guidelines." We interpret this section as a clarification of the 1987 Guidelines to conform them to existing statutory and case law.

Because we conclude that the trial court erred in calculating the income each party had available for support, we remand for reconsideration of the child support award. This does not, however, exhaust the issues of this appeal.

**B.** *Mother's Part-time Earnings*

██ We next consider Father's argument that the trial court should have attributed more than part-time earning capacity to Mother. Although the parties' situation may have changed by the time of rehearing, we find no error in this aspect of the trial court's evaluation of the evidence that it heard.

Section B.4.e of the 1987 Guidelines provided:

> If a parent is unemployed or working below full earning capacity, the court may consider the reasons. If earnings are reduced as a matter of choice and not for reasonable cause, *such as caring for children,* the court may attribute income to the parent up to his or her earning capacity.

(emphasis added).[5] The trial court heard evidence that enabled it to conclude that Mother needed to reduce her working hours to meet child care responsibilities. The trial court had discretion to assign Mother a reduced earning capacity on that ground.

**C.** *Credit for Support of Other Children*

██ Father also objects to the trial court's subtracting $150 from Mother's

---

determination of appropriate child support awards. The guidelines and criteria for deviation from them shall be based on all relevant factors, including:

1. The financial resources and needs of the child.
2. The financial resources and needs of the custodial parent.
3. The standard of living the child would have enjoyed had the marriage not been dissolved.
4. The physical and emotional condition of the child, and his educational needs.

5. The financial resources and needs of the noncustodial parent.
6. Excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common.
7. The duration of the visitation and related expenses.

**5.** In section 5.e of the 1989 Guidelines, the emphasized portion of this provision was omitted. We do not determine the import, if any, of this omission.

monthly income as support for the child of her second marriage. He contends that the credit was unfair because the court did not similarly decrease his income for amounts he expended to support his wife's children. We disagree.[6]

The 1987 Guidelines specifically provided in section A.2.e, "The obligation to support other children may be taken into account by the court but shall not necessarily entitle the paying parent to a reduction of support, proportionate or otherwise." [7] This section permitted the trial court to recognize Mother's obligation to support her youngest child in assessing the income she had available to support her other children.

As for Father's objection to the court's failure to credit him for the support of his current spouse's children, the crucial difference under both the 1987 and 1989 guidelines is that those children are not his own. Because Father has not adopted and is not obligated to support the children of his wife, we find no abuse of discretion in the court's decision to credit Mother but not Father for supporting other children.

## D. *Credit for Direct Support*

■ Father next alleges that the trial court erred by failing to sufficiently credit him for amounts he pays to support his children when they are in his care.

The 1987 Guidelines recognized the delicate discretionary function of assessing child support in a shared custody arrangement.

Section B.12 of the 1987 Guidelines stated:

It is the intention of these guidelines to remove financial incentives associated with custody and visitation arrangements. Shared custody shall warrant child support less than provided in these guidelines only where the court specifies and apportions an offsetting amount of the children's expenses to the parent paying support.

Section C.14 added, however, that the court might appropriately reduce child support to the custodial parent when the noncustodial parent provided for the children's needs over an extended period of time.[8]

In this case, Mother testified that her original expense sharing agreement with Father was unsatisfactory. She stated that the parties quarreled over who would pay for the children's medications, clothing, and leisure activities. The trial court resolved these difficulties by designating Mother as the primary residential parent and ordering that support be paid to her. This result was supported by the evidence.

Moreover, the trial court credited Father to a degree by reducing his support obligation to $280 for the months of June and July each year, when the children reside

---

6. Father also contends that there was little, if any, testimony to support the trial court's allocation of $150 for Mother's youngest child's support. Because the trial court upon remand may consider fresh evidence on the entire question of child support, it is unnecessary for us to assess the strength of Mother's previous evidence on this point.

7. Section 2.e of the 1989 Guidelines provides: "A parent's legal duty is to support his or her natural or adopted children. Support of "other children" [later defined as 'natural or adopted children who are not the subject of this particular child support determination'] may result in an adjustment [to gross income]."

"The 'support' of other persons such as stepchildren or parents is deemed voluntary and is not a reason for an adjustment...."

8. Section B.12 and C.14 were deleted in the 1989 Guidelines and replaced with section 16, concerning the "Impact of Physical Custody Arrangements." Section 16 states:

It is the intention of these guidelines to remove financial incentives associated with custody and visitation arrangements.

Generally, there shall be no deviation from these guidelines as a result of joint custody or visitation in accordance with the visitation practices or visitation guidelines used in the county where the child support order is being entered. In recognition of exceptional physical custody arrangements, the court may deviate from these guidelines pursuant to Section 15 [of these guidelines] after considering:

a) The percentage of time each parent has physical custody of the children, and

b) To what extent, if any, the physical custody arrangements reduce the expenses of the parent receiving support.

The court may also consider to what extent, if any, the arrangements increase the expenses of the parent paying support.

with him. We find no abuse of discretion in the trial court's failure to give Father greater credit for direct support.

### E. *Which Guidelines Apply on Remand*

■ In its order adopting the current Child Support Guidelines, effective December 31, 1989, the Arizona Supreme Court stated that the 1989 Guidelines would be "effective for all child support awards ... made in actions *filed* after December 31, 1989." Supreme Court of Arizona Revised Administrative Order 89–26 (Jan. 10, 1990) (emphasis added).

We now require a new hearing in a modification proceeding initiated before December 31, 1989. However, we do not read the supreme court's order as precluding use of the more current guidelines when the new hearing is held.

First, neither party has a vested substantive right to have the 1987 version of the guidelines applied. As we have indicated, guidelines are not law; they are merely aids to application of the law in accordance with current economic and social facts. *See Schenek,* 161 Ariz. at 581, 780 P.2d at 414. Second, the Legislature now requires the supreme court to review the guidelines "at least once every four years" to assure that courts will not act on the basis of outdated economic and social facts. *See* Ariz. Rev. Stat. Ann. § 25–320(A) (Supp. 1990). It would contravene this purpose to withhold availability of current guidelines upon remand.

Revised rules of procedure are generally applicable to pending cases, and we conclude that the same treatment is appropriate for child support guidelines. *Morris v. Southwest Savings and Loan Ass'n,* 9 Ariz. App. 65, 69, 449 P.2d 301, 305 (1969). Upon remand the most recently adopted guidelines will apply.

### ATTORNEYS' FEES

■ Father last alleges that the trial court erred in awarding Mother $6,000 in attorneys' fees pursuant to Ariz. Rev. Stat. Ann. § 25–324 (1976). The trial court based this award on the "financial circumstances of the parties, including the Fa-

ther's anticipated employment as a school teacher, and the Court's findings that the Mother's initial request for some weekend time with the children was not unreasonable."

Awards of attorneys' fees made pursuant to Ariz. Rev. Stat. Ann. § 24–324 are meant to ensure that the poorer party in a dissolution proceeding has means to litigate. *Garrett v. Garrett,* 140 Ariz. 564, 569, 683 P.2d 1166, 1171 (App.1983). We review for abuse of discretion. *In re Marriage of Berger,* 140 Ariz. 156, 680 P.2d 1217 (App.1983). In this case we reverse, just as we reversed the child support award, because the trial court inappropriately attributed to Father half of the income of his wife. Because we cannot determine what the trial court might have done had it not made such an attribution, we remand for another determination of fees.

Mother contends that the fee award was justified not only by § 25–324, but by Ariz. Rev. Stat. Ann. §§ 12–341.01(C) (1982) and 12–349 (Supp.1990) as well. The latter statutes apply to unjustified actions and groundless claims and defenses. Mother points to the court's finding that "Mother's initial request for some weekend time with the children was not unreasonable" and urges this as an implicit finding that Father's position was unjustifiable or groundless to some degree. Sections 12–341.01(C) and 12–349 impose fees for bad faith, however, and we find no evidence of such conduct in this record. The trial court's statement is certainly insufficient to show that it based the attorneys' fees award on statutes other than § 25–324.

Mother has also requested an award of attorneys' fees incurred in preparation of this appeal. We deny this request at this juncture because we have no current affidavits setting forth the financial circumstances of the parties. Our denial of appellate fees is without prejudice, however, and we leave the issue for the trial court to decide when it determines fees below.

### CONCLUSION

In determining income for child support and attorneys' fees, the trial court may

only consider a current spouse's income to the extent that it defrays a parent's expenses. The court may not simply expand the parent's income by attributing an undivided one-half share in the income of the parent's current spouse. Because the trial court erred in this regard, we remand for a redetermination of child support and attorneys' fees.

Reversed and remanded.

BROOKS, P.J., and TAYLOR, J., concur.