897 P.2d 685

**In re the Marriage of Kimberly Kay CUMMINGS, Petitioner–Appellant,**

v.

**Mark CUMMINGS, Respondent–Appellee.**

No. 1 CA–CV 93–0164.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 15, 1994.

Review Denied June 29, 1995.*

* Feldman, C.J., of the Supreme Court, voted to    grant the petition for review.

Thomas N. O'Leary, Phoenix, for petitioner-appellant.

Law Offices of Brenda K. Warneka by Brenda K. Warneka, Phoenix, for respondent-appellee.

## OPINION

KLEINSCHMIDT, Judge.

This appeal arises out of the dissolution of the marriage of Mark and Kimberly Cummings and the modification of the original award for child support that was entered in that proceeding. In modifying the original award, the trial judge took into account that Kimberly Cummings, the Mother, was receiving about $2,400 a month from her parents on a regular basis as a gift. The Mother argues that it was error to take this into account. We disagree because the gifts are substantial and continuing and because, should they cease, the Mother can always seek additional child support from her former husband based on changed circumstances. We affirm the decision of the trial court.

The parties were divorced in 1991. Pursuant to agreement, they had joint custody of their two children. The children were to spend half of their time with each parent. Under the original child support order, the Father paid $375 per month in support, plus $35 per month for medical insurance for the children, plus up to $300 per month for child care.

After the original award was entered, the Father learned that the Mother was receiving regular and continuous gifts from her parents. These gifts included the free use of

a home owned by the parents on which they made a monthly mortgage payment of $973; cash gifts in the form of checks and wire transfers in the amount of $33,429 received over an eighteen-month period; forgiveness of $10,000 in debts owed by the Mother to her father; and other gifts, including the purchase of furniture for the Mother's home, the purchase of airline tickets for the Mother and the children, and the free use of a credit card.

The Father asked the court to modify the child support award by taking the Mother's gift income into account in calculating her gross income. The trial court ordered that effective January 1, 1993, neither parent had to pay child support. The court based its decision on a recalculation of the parties' gross incomes in which it found that the gifts of cash and the mortgage payments constituted gross income to the Mother for the purposes of calculating child support. The trial judge found that the gifts of cash and the mortgage payment were regular and continuous and that it was consistent with the intent of the statutes relating to child support and with the Arizona Child Support Guidelines to treat the gifts as gross income to the Mother. The inclusion of the mortgage payments and cash gifts increased the Mother's gross monthly income to $3,908. The court found that the Father had a gross monthly income of $4,150 and was paying $35 per month for medical insurance for the children. Based upon these figures, the Father had a support obligation of $802 per month and the Mother had a support obligation of $805 per month. Because each parent had the children half the time, the court ruled that neither was obligated to pay support to the other.

An award of child support is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Berger*, 140 Ariz. 156, 167, 680 P.2d 1217, 1228 (App.1983). Arizona has adopted the Arizona Child Support Guidelines for, among other things, the purpose of establishing a standard of support for children consistent with their needs and the ability of parents to pay, and to make child support awards con-

sistent for persons in similar circumstances. Arizona Child Support Guidelines § 1 (1992). The Guidelines follow an income-sharing approach in which support is based on the gross income of both parents and in which the total support is to approximate the amount that would have been spent on the children if the parents and children were still living together. Because the Guidelines are based upon assumptions about spending patterns of families at various income levels, gross income for child support purposes is not determined by the gross income shown on the parties' income tax returns, but rather on the actual money or cash-like benefits received by the household which is available for expenditures. *See id.* at § 5; *Rules Changes Child Support (Use of the New Arizona Child Support Guidelines)*, Ariz. Bus. Gaz., Nov. 2, 1987, at L17. Thus, the Guidelines define gross income broadly as:

> *income from any source, and may include, but is not limited to,* income from salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits (subject to Section 22), workmen's compensation benefits, unemployment insurance benefits, disability insurance benefits, *gifts*, prizes, and spousal maintenance. Cash value shall be assigned to in-kind or other non-cash benefits.

Arizona Child Support Guidelines § 5(a) (1992) (emphasis added).

The Mother argues that the inclusion of the gifts in her gross income improperly places the support obligation for her children on their grandparents, and improperly decreases the obligation of the children's father. She argues that such a result is contrary to governing Arizona statutes and case law which conflict with and supersede the Guidelines, is contrary to established "general law," and is contrary to the policies behind the Guidelines. The Mother also argues that no basis for a modification of child support exists under the statute relating to modification of awards. Finally, she argues that the provision of the Guidelines which authorizes the attribution of gifts to her gross income violates her due process rights.

██ Under Arizona law, the duty of child support is placed solely on the parents of the children, not on grandparents or other relatives. *See* Ariz.Rev.Stat.Ann. ("A.R.S.") § 25–320(A). The trial court's order does not contravene this policy. The modified order did not foist the obligation of support upon the grandparents in this case. The trial court neither considered the grandparents' financial condition nor ordered them to pay any support. The salient facts are that the grandparents' gifts were voluntary and consistent and that once donated, the money belonged to the Mother in every legal and practical respect. Arizona Revised Statutes section 25–320(A) provides that the court can order *both* parents to pay reasonable and necessary child support based on *their* financial resources, and the amount of support awarded should not be unjust. The statute does not specify or limit the items that the court may consider in determining a parent's "financial resources." The designation of predictable gift income as part of the parents' income or financial resources is not unreasonable or at odds with the purpose expressed in the statute. On the contrary, by allowing the trial court to consider all aspects of a parent's income, the Guidelines ensure that the child support award is "just" and based on the total financial resources of the parents. *See Margolin v. Margolin*, 796 S.W.2d 38, 44 (Mo.App.1990) (construing Missouri child support statute authorizing court to consider "all financial resources" of parents to include "the largesse to the parent from a third party").

The inclusion of gift income in the Mother's gross income does not relieve the Father of his independent duty to provide reasonable support for his children under A.R.S. section 12–2451. The Father still has custody of the children half of the time during which he provides for their support. The decrease of his support obligation due to the increase of the Mother's income is consistent with the mandate of the child support statutes that support be "just" and based on the financial resources of *both* parents.

The Mother's citation of Arizona case law is off the mark. She first relies on *Spector v. Spector*, 17 Ariz.App. 221, 496 P.2d 864 (1972), which held that the financial condition of grandparents is not a proper matter for consideration in determining child support. *Id.* at 228, 496 P.2d at 871. As we have already observed, the trial court did not consider the financial condition of the grandparents in calculating child support; it only considered the money the grandparents regularly and voluntarily gave their daughter to assist her in maintaining a certain standard of living for herself and her children.

The Mother also relies on *Brevick v. Brevick*, 129 Ariz. 51, 628 P.2d 599 (App.1981), for the argument that the gift income may not be considered because its receipt is too uncertain and tentative. The *Brevick* court stated that "a support award must be certain and definite based upon present conditions and not made to depend on uncertain contingencies or hypothetical earnings or income." *Id.* at 54, 628 P.2d at 602. *Brevick*, however, does not discuss the treatment of gift income. Instead, the case stands for the proposition that child support may not be based on a percentage of future income. *Id.* at 53–54, 628 P.2d at 601–02. The court was concerned that parents would purposefully inflate their projected income so that a smaller percentage of income would be assigned to child support, and the actual child support received would be below the court's determination of the child's needs. *Id.* Here, the trial court did base its support award upon "present conditions"—including some but not all of the Mother's gift income. The Mother presented no evidence that her gift income was going to cease, or that it was any more tentative than the salary of an at-will employee. Accordingly, the concerns underlying *Brevick* are not present in this case.

██ The dissent, drawing an analogy between gifts from grandparents and the income of a new spouse, cites *Beck v. Jaeger*, 124 Ariz. 316, 604 P.2d 18 (App.1979), for the proposition that when a former wife remarries, the income of her new spouse "has no bearing on [the former husband's] obligation to support his children." 124 Ariz. at 317, 604 P.2d at 19. We believe that *Beck* merely stands for the proposition that a new spouse has no obligation to support children of a prior marriage. The court made the state-

ment quoted above almost as an after-thought, and there is nothing in the opinion, either as to duration or degree, concerning how the wife and child in this case might have benefitted from the new spouse's income. We believe that in considering the equities affecting child support, a court may still take into account any regular and substantial benefits a parent receives from re-marriage. Another panel of this court recognized this very point in the case of *In re Marriage of Pacific,* 168 Ariz. 460, 815 P.2d 7 (App.1991), when, in holding that the income of a parent's new spouse could not be counted as gross income to the parent, it said:

> It is one thing to consider the *benefits* that a parent derives from remarriage or expense-sharing. It is another to automatically treat one-half of that parent's spouse's income as the parent's own.[1]

*Id.* at 463, 815 P.2d at 10 (emphasis added).

The Mother also refers to two secondary sources and the case law they cite to support her argument that "established general law" excludes gift income from a mother's gross income in the context of child support. *See* 24 Am.Jur.2d *Divorce and Separation* § 1039 (1983); S.R. Shapiro, Annotation, *Excessiveness of Amount of Money Awarded as Child Support,* 1 A.L.R.3d 382, 412 (1965); *Bruguier v. Bruguier,* 12 N.J.Super. 350, 79 A.2d 497 (1951); *Pegram v. Pegram,* 310 Ky. 86, 219 S.W.2d 772 (1949); *Dickens v. Dickens,* 82 Cal.App.2d 717, 187 P.2d 91 (1947). These cases were decided over forty years ago when other cases held that a father's gift income could be attributed to his income when setting child support. They appear to be based on the antiquated concept that a father is solely responsible for the support of the children. We do not find them persuasive.

The Mother argues that the decision to include the gifts in her gross income will discourage gift-giving because donors will feel as though they have shouldered part of the parents' support obligation. This is speculative and outweighed by the statutory poli-cy that child support orders be equitably based on the financial resources of each parent.

■ The Mother argues that it was improper to modify the order for child support because there was *no evidence of a* substantial and continuing change in circumstances as required by A.R.S. section 25–327(A). As with the original determination of a child support award, the decision whether changed circumstances exist to warrant modification of an award is within the sound discretion of the trial court. *Brevick,* 129 Ariz. at 52, 628 P.2d at 600. There is sufficient evidence in the record to support the trial court's decision. The Mother's income more than doubled due to the cash gifts and mortgage payments. The trial court specifically found that the gifts included were "regular and continuous." For over eighteen months, the Mother's parents regularly paid their daughter's mortgage and provided her with $1,435 in cash per month. The Mother failed to present any evidence that her parents intended to discontinue or decrease these gifts. Before the trial court issued its ruling, the Mother's father was killed in a plane crash, and the court postponed its ruling to provide the Mother with an opportunity to demonstrate what effect, if any, her father's death might have had on her receipt of gift income. The Mother never presented any evidence that the gifts would cease or become sporadic in nature. It remains open to either party to petition for modification of the child support order in the event that his or her respective financial circumstances should change.

■ The Mother argues that the gift provision in the Guidelines violates her constitutional rights because it is inequitable in nature, contrary to established authority, and in conflict with other provisions of the Guidelines. A substantive right must prevail over a guideline. *See Schenek v. Schenek,* 161 Ariz. 580, 581, 780 P.2d 413, 414 (App.1989).

---

1. The court, in referring to benefits received, was relying on section B.4.f. of the 1987 Guidelines which specifically allowed the court to consider benefits derived from remarriage. We do not believe that the replacement of this provision with one which spells out that income of a new spouse is not treated as income of a parent under the Guidelines detracts from our conclusion that the court can consider the largess of *any* third parties.

The Mother, however, has not identified how the award violates her rights. We have already rejected her contention that the gift provision of the Guidelines conflicts with Arizona law or other "established" law. Nor have the Guidelines been inequitably applied in this case. Finally, the Mother's contention that the gift provision of the Guidelines conflicts with other provisions of the Guidelines is simply unsubstantiated.

The Father has asked for an award of his attorneys' fees incurred on appeal pursuant to A.R.S. section 12–2453(C), which allows the court to award attorneys' fees and costs to the prevailing party in a proceeding to modify or revoke a support award, and section 25–324, which authorizes the award of attorneys' fees and costs in a dissolution or post-dissolution proceeding. Under both statutes, the award of fees is within the court's discretion. *Berger,* 140 Ariz. at 167, 680 P.2d at 1228. Given the relatively equal financial status of the parties and the novelty of the legal question presented for review, we decline to award the Father his attorneys' fees in this case.

NOYES, J., concurs.

GARBARINO, Judge, dissenting:

I respectfully dissent. I find it incredible that the majority would penalize grandparents who gratuitously try to provide their child and grandchildren with a better life and at the same time reward the parent who wishes to evade his legal and moral obligation to provide financial support to his children. Here we have a father who has convinced the trial court that his child support obligation should be reduced because his ex-wife's parents have been kind enough to help support his children.

The majority believes that once a grandparent renders financial support to a child to aid in the support of a grandchild, the other parent's support obligation should, in effect, be reduced. The majority bases its rationale on the Arizona Child Support Guidelines which provide that "[g]ross income includes income from any source, and may include ... income from ... gifts." Guidelines § 5.a.

It must be remembered that the Guidelines are not law; they are guidelines. In *Schenek v. Schenek,* 161 Ariz. 580, 581, 780 P.2d 413, 414 (App.1989), the court stated:

The guidelines are merely that, guidelines. They are to assist the trial courts of Arizona in applying the factors set forth in the statute. The guidelines insure that child support awards are consistent for persons in similar circumstances. They operate as presumptions and thus are procedural in concept.

Simply put, the Guidelines mention "income from gifts" as a source that *may* be considered in the computation of child support, not *must* be considered. In this case, such consideration leads to an absurd result.

The majority tries in vain to distinguish this case from *Spector v. Spector,* 17 Ariz. App. 221, 228, 496 P.2d 864, 871 (1972), in which the court found that the financial condition of the grandparents was an improper matter for consideration in determining the child support obligation of a parent. The majority finds that the trial court did not consider the financial condition of the grandparents, but only "the money the grandparents regularly and voluntarily gave their daughter." I fail to see the distinction. The majority assumes that these individual gifts will continue with equal regularity. This assumption is based on nothing other than the consideration of the grandparents' financial ability and goodwill.

Ironically, if the grandparents were to gift financial aid directly to the grandchildren, the Guidelines provide that these funds would not relieve a parent of a support obligation. Section 21 of the Guidelines provides that "[i]ncome earned or money received by a child from sources other than child support shall not relieve a parent of the support obligation established by these guidelines." However, when gifted to the Mother, the gifts become income for child support computation purposes thereby reducing the amount of the Father's child support obligation. This cannot be the result contemplated by those who drafted the Guidelines.

In *Beck v. Jaeger,* 124 Ariz. 316, 317, 604 P.2d 18, 19 (App.1979), an ex-wife filed a petition seeking an increase in child support.

The court stated that "the earnings of [ex-wife's] present husband are not insubstantial. This fact, however, has no bearing on [ex-husband's] obligation to support his children." *Id.* Section 5.f. of the Guidelines reaffirms this by stating that "[i]ncome of a parent's new spouse is not treated as income of that parent under these guidelines." Therefore, if the Mother's increased standard of living were due to remarriage, it would not be considered income. However, because it comes from her parents, it is considered income, and ex-husband's support obligation is subsequently reduced. This can hardly be what the Guidelines contemplate.

The majority cites *In re Marriage of Pacific*, 168 Ariz. 460, 815 P.2d 7 (App.1991), as support for the trial court's weighing the equities of the situation which produces a result in harmony with its decision. However, the comparison loses steam when one considers that *Pacific* contemplates the financial benefit received by a parent who has a community interest in the new spouse's earnings. Here the Mother apparently has no vested or legal interest, at this point, in her parents' estate. The Mother's parents have no legal obligation to support her. This is a gift, pure and simple.

The majority believes that *Pacific* is good law. I concur. But *Pacific* does not address the issue of "gifts." *If* the grandparents irrevocably gift funds to their daughter for investment purposes and if those funds create income by way of interest, rents or dividends, it may be a proper consideration for the trial court when determining a parent's gross income for child support purposes.

The grandparents' gifts are immaterial to the Father's legal obligation to support his children. The fact that the Mother has reliable, considerate and generous parents willing to rise to the occasion and contribute to her upkeep does not lead to the conclusion that the Father's child support obligation should be lessened.

I adopt the view expressed by the Kentucky Court of Appeals on the subject:

· With respect to the appellant's suggestion that the wife's parents should support the child because they are wealthy we need only say that we are amazed that such a suggestion could seriously be made.

*Halcomb v. Halcomb,* 337 S.W.2d 32, 34 (Ky. 1960).