NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

BRITTANY GALLO, *Petitioner/Appellant-Cross Appellee,*

*v.*

T.J. GALLO, *Respondent/Appellee-Cross Appellant.*

No. 1 CA-CV 20-0642 FC
FILED 11-16-2021

Appeal from the Superior Court in Maricopa County
No. FC2018-051534

The Honorable Dawn M. Bergin, Judge (Retired)

**AFFIRMED**

COUNSEL

The Cavanagh Law Firm, P.A., Phoenix
By Christina S. Hamilton
*Counsel for Petitioner/Appellant-Cross Appellee*

Berkshire Law Office, PLLC, Tempe
By Keith Berkshire, Erica Leavitt
*Counsel for Respondent/Appellee-Cross Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge D. Steven Williams delivered the decision of the Court, in which Judge David B. Gass and Judge James B. Morse Jr. joined.

---

**W I L L I A M S**, Judge:

¶1        Brittany Gallo ("Mother") appeals the superior court's equal parenting time, child support, and debt division orders. TJ Gallo ("Father") cross appeals the superior court's child support order. For the following reasons, we affirm all orders.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        Mother and Father married in 2012 and have two minor children together. In 2018, Mother petitioned for divorce, requesting joint legal decision-making authority and equitable parenting time with her designated as the primary custodial parent. After agreeing to participate in the collaborative law process under Arizona Rule of Family Law Procedure ("Rule") 67.1, the parties entered into two Rule 69 agreements. In the first, the parties agreed to joint legal decision-making authority of the children and a parenting time schedule with Father having the children every other Wednesday overnight, as well as every other weekend Friday through Sunday overnight. The second agreement mainly dealt with finances and safety for the children, including an agreement to share equal responsibility for "the outstanding community debt owed to Mother's parents[]."

¶3        In late 2018, Mother obtained an order of protection against Father but withdrew it once Father challenged the order. The following month, Mother opted out of the collaborative law process and moved for a pre-decree temporary order without notice requesting sole legal decision-making authority and custody based upon an incident that occurred during the parties' parenting time exchange. The superior court initially granted Mother's motion, but after holding an evidentiary hearing, vacated the temporary order and instead ordered Father have a supervised visit to allow him to apologize to the children for the incident and then parenting time would revert to the parties' previously agreed to schedule.

¶4        Mother later moved for Father's parenting time to be supervised based upon concerns of Father's excessive use of prescription pain medications. The superior court denied Mother's motion but ordered

an expert in pain medication management to examine Father. Mother filed a similar motion the following month, alleging Father left the children in a running car in a doctor's office parking lot. Because of the incident, Mother sought, and obtained, an order of protection against Father for her and the children. Following a resolution management conference, the superior court accepted the parties' agreement and ordered that, in exchange for removing the children from the amended protective order, Father was precluded from driving with them and would have up to twelve hours of parenting time per week that had to be either supervised or in a public place.

¶5 After the court-appointed pain medication management expert issued a report, Father moved for unsupervised and equal parenting time. Following an evidentiary hearing, the superior court issued an order lifting the driving restrictions, awarding Father unsupervised parenting time, and issuing other orders related to Father's use of pain medications while with the children. Months later, the superior court again increased Father's parenting time to every Wednesday evening and every other weekend.

¶6 The parties subsequently filed a joint pretrial statement, and the superior court held a two-day dissolution trial. At trial, Mother's accounting expert estimated Father's income exceeded $200,000 annually based, in part, upon Father's reported expenses in his affidavit of financial information and the expert's projections for Father's rental income. Father disagreed with the expert's future projected earnings from the vacation rental home, and stated he had financed his expenses using "every last penny of his lifetime savings," and that his assets and savings [were] entirely extinguished." Father acknowledged he had some income from his rental property, but asked the court to calculate his income at $50,000.

¶7 After trial, the court reviewed the best interests of the children factors enumerated in A.R.S. § 25-403 and found both parents had a close relationship with the children in the past and expected that to be the same in the future. The court found Father "did not use the best judgment" and "behaved inappropriately" at times, but it also found Mother "engaged in a relentless campaign to undermine Father's relationship with the children and to convince [the court] to limit his parenting time." The court found Mother damaged her credibility with her "exaggerations and distortions."

¶8 The superior court further found that, though the rebuttable presumption against awarding Father legal decision-making authority under A.R.S. § 25-403.04 existed because of Father's past excessive use of

pain medications, Father rebutted that presumption where his physician imposed hard refill dates and by taking a variety of other steps. Regarding debt division, the court found insufficient evidence established the funds provided by Mother's parents constituted a loan rather than a gift.

**¶9** Based upon its findings, the superior court awarded the parties joint legal decision-making authority of the children, with Mother having final authority subject to specific limitations, and equal parenting time. The court also ordered Father to pay Mother $1,077 per month in child support.

**¶10** Mother timely appealed, and Father timely cross-appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶11** Mother challenges the superior court's parenting time, debt division, and child support orders, arguing the court erred in not enforcing both Rule 69 agreements and in calculating Father's income. Father cross-appeals the child support orders, arguing the court erred when, solely based on Mother's testimony, it included in the child support worksheet $581 per month in insurance costs and $700 per month in childcare costs.

**¶12** We review the superior court's parenting time and child support orders for an abuse of discretion. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018) (parenting time orders); *In re Marriage of Robinson*, 201 Ariz. 328, 331, ¶ 5 (App. 2001) (child support orders). An abuse of discretion occurs either when the court commits an error of law in reaching a discretionary decision or when the record does not support the court's decision. *Engstrom*, 243 Ariz. at 471, ¶ 4. "We accept the [superior] court's findings of fact unless they are clearly erroneous but review conclusions of law and the interpretation of statutes *de novo*," *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019), including Rule 69 agreements and the Arizona Child Support Guidelines, A.R.S. § 25-320 app. ("Guidelines"), *McNutt v. McNutt*, 203 Ariz. 28, 31, ¶ 10 (App. 2002) (applying "the same rules of construction in interpreting the Guidelines that we use in construing statutes").

### I.   Rule 69 Agreements

**¶13** Mother contends the superior court approved and adopted the first Rule 69 agreement as an enforceable order before trial and, consequently, the agreement was binding on the court regarding parenting

time. Father argues the court's issuance of multiple orders modifying the first Rule 69 agreement's terms at the parties' requests voided it and, regardless, the court "still had an obligation, pursuant to A.R.S. §§ 25-317 and -403 to ensure that the parenting time plan was in the children's best interest." Father also argues the court was within its discretion to find there was insufficient evidence to prove the money Mother alleged was community debt owed to Mother's parents because the debt amount and repayment terms were vague under the second Rule 69 agreement.

¶14        A.R.S. § 25-317(A) provides that "parties may enter into a written separation agreement containing provisions for disposition of . . . support, custody and parenting time of their children." "An agreement between the parties is valid and binding on the parties," but "is not binding on the court until it is submitted to and approved by the court as provided by law." Ariz. R. Fam. Law P. ("ARFLP") 69. "[The] court has discretion to reject a Rule 69 agreement if it is not 'reasonable' as to custody and parenting time." *Engstrom*, 243 Ariz. at 472, ¶ 8 (quoting A.R.S. § 25-317(D)). However, if the court finds that the agreement is "reasonable as to support, custody and parenting time of [the] children, the [Rule 69] agreement shall be set forth or incorporated by reference in the decree of dissolution." A.R.S. § 25-317(D). Regarding other terms of a Rule 69 agreement, the court must apply general contract principles as to the agreement's construction and enforcement. *Emmons v. Superior Ct.*, 192 Ariz. 509, 512, ¶ 14 (App. 1998).

         a.   *Parenting Time*

¶15        Here, as part of the collaborative law process, the parties entered into a Rule 69 agreement that contained parenting time provisions. The parties were at the time bound by this agreement under Rule 69(B). However, until the superior court approved the agreement as an enforceable order, it retained authority to exercise its independent discretion regarding parenting time orders pursuant to A.R.S. § 25-317. *See* ARFLP 69(B) ("An agreement under this rule is not binding on the court until it is submitted to and approved by the court as provided by law."); *cf. Engstrom*, 243 Ariz. at 472, ¶ 9 (providing the court no longer retained its authority where it had previously approved the parties' Rule 69 agreement as an enforceable order).

¶16        The superior court issued its first temporary custody and parenting time order when it granted Mother's motion (without notice) for sole legal decision-making and physical custody of the children and no parenting time for Father. Following an evidentiary hearing, the court vacated its temporary ruling and instead ordered a supervised visit for

Father to apologize to the children and, barring another request to modify parenting time, the parties would revert back to their Rule 69 agreement. Mother argues under *Engstrom* the court's order for a return to parenting time under the Rule 69 agreement indicates the court's acceptance of the Rule 69 agreement. But *Engstrom* is distinguishable. In *Engstrom*, the court made an express finding at a resolution management conference that the Rule 69 agreement was "fair and equitable," and "in the best interest of the parties' minor children." 243 Ariz. at 471, ¶ 6. The court there also approved the agreement "as an enforceable order of th[e] Court." *Id.* (alteration in original). No such express finding or order was made here. Rather, without addressing the merits of the Rule 69 agreement, including whether its terms were in the best interests of the children, the court simply indicated that parenting time would revert, temporarily, to the schedule the parties had previously agreed upon. We cannot say the court's actions here indicated its intent to accept the agreement as an enforceable order of the court.

**¶17** Because the court retained its authority to exercise its independent discretion pursuant to A.R.S. § 25-317, we reject Mother's argument that the court erred when it failed to enforce the parenting time schedule under the Rule 69 agreement. *See* ARFLP 69.

### b. *Debt Division*

**¶18** Similarly, Mother argues the superior court erred when it failed to enforce the second Rule 69 agreement. The record shows the parties entered into a second Rule 69 agreement in which they agreed to be equally responsible for debt owed to Mother's parents. In its decree, the court found the parties' Rule 69 agreement was "no longer applicable" because the collaborative law process ended. For debt division, the court found there was "insufficient [evidence presented at trial] to establish that the funds provided by Mother's parents to Mother and Father during their marriage constituted a loan, rather than a gift."

**¶19** Though we disagree with the superior court's assertion that the second Rule 69 agreement was no longer applicable once the collaborative law process ended, the court committed no error in failing to enforce the debt provision because its terms relating to debt owed to Mother's parents were vague and disputed. While Mother testified her parents provided her and Father with a $160,000 loan, Father argued no such debt existed, instead any monies received from Mother's parents constituted a gift. On this issue, the court made a credibility determination based upon the conflicting evidence and ultimately found the evidence wanting. Mother has shown no error in the court's debt division order.

## II.    *Child Support*

**¶20**        Mother and Father both argue insufficient evidence supports various parts of the superior court's child support orders. Mother contends that the court erred in determining Father's income for child support purposes, arguing no evidence supported the court's finding that Father's income was $77,160 per year. Father challenges the superior court's inclusion of Mother's payment of $581 per month in insurance costs and $700 per month in childcare costs in the child support worksheet, arguing no evidence supported such costs.

**¶21**        "Arizona has adopted the Arizona Child Support Guidelines for, among other things, the purpose of establishing a standard of support for children consistent with their needs and the ability of parents to pay, and to make child support awards consistent for persons in similar circumstances." *Cummings v. Cummings*, 182 Ariz. 383, 385 (App. 1994) (citing Guidelines § 1). In determining a child support award, the superior court considers the parents' gross income, which includes income from any source. Guidelines § 5(A). "[G]ross income for child support purposes is not determined by the gross income shown on the parties' income tax returns, but rather on the actual money or cash-like benefits received by the household which is available for expenditures." *Sherman v. Sherman*, 241 Ariz. 110, 113, ¶ 14 (App. 2016) (quoting *Cummings*, 182 Ariz. at 385).

**¶22**        Mother claimed her current income was $42,000 per year and she spends $581.12 per month on the children's medical insurance and $700 per month on childcare costs. Father claimed to be unemployed but acknowledged he recently began earning an income from renting out his home; Father estimated his 2020 income at that point to be $13,000. As noted *supra* ¶ 6, Mother's accounting expert estimated Father's annual income exceeded $200,000. In its decree, the court found problems with the calculations provided by Mother's expert because the figures did not account for vacation rental cancellations, fees, lodging costs, and differences in seasonal rates. The court noted its difficulty in accepting either parties' position regarding Father's income. The court ultimately calculated Father's annual income as $77,160 after adding $61,728 for eight months of rental fees it categorized as the busy months plus $15,432 for the remaining four months it categorized as the slow months. The court has broad discretion in determining income and reached a number somewhere between Father's position and Mother's. *See Cummings*, 182 Ariz. at 385; *Sherman*, 241 Ariz. at 114, ¶ 14 (providing the Guidelines do not "expressly define 'income,' and the question to what extent 'income' may include loan

proceeds is an open one in Arizona"). The court also explained its reasoning for its findings. Reasonable evidence supports the court's finding.

**¶23**        As to Father's cross-appeal and assertion that the superior court's inclusion of $581 per month in insurance costs and $700 per month in childcare costs in the child support worksheet is not supported by the record, we disagree. Mother testified as to both costs and Father offered no testimony to the contrary. Record evidence supports the court's findings.

## CONCLUSION

**¶24**        For the foregoing reasons, we affirm the superior court's parenting time, debt division, and child support orders. In the exercise of our discretion, we deny both parties' requests for costs, as well as attorney's fees pursuant to A.R.S. § 25-324.

