NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

AMARILIS DELCARMEN JAEN, *Petitioner/Appellee,*

*v.*

JEFFREY R. HOAG, *Respondent/Appellant.*

No. 1 CA-CV 22-0431 FC
FILED 6-1-2023

Appeal from the Superior Court in Mohave County
No. L8015DO202107011
The Honorable Megan A. McCoy, Judge

**VACATED AND REMANDED**

COUNSEL

Thomas A. Morton PLLC, Phoenix
By Thomas A. Morton
*Counsel for Petitioner/Appellee*

Schiefer Law Firm PLC, Mesa
By Spencer T. Schiefer
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which Vice Chief Judge David B. Gass and Judge Brian Y. Furuya joined.

---

**J A C O B S**, Judge:

¶1 Jeffrey Hoag (Father) appeals from several rulings in the decree dissolving his marriage to Amarilis DelCarmen Jaen (Mother). Because the superior court did not make certain findings required by statute and rule, we vacate the legal decision-making, parenting time, relocation, spousal maintenance, and child support orders and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

### A. The Parties' Marriage

¶2 Mother and Father met online when Mother lived in Panama and Father lived in the United States. Father visited Panama in 2012, and they decided to marry. In February 2014, Mother moved to the United States, and they got married. They had a son in 2014 and a daughter in 2016. Their son has autism and an individualized education program (IEP). He has also received services from speech and occupational therapists.

¶3 When Mother arrived in the United States, she had completed her education and training to become a medical doctor in Panama. She spoke little English and did not work after moving to the United States. Father has a college degree and worked in commercial property management until 2019. At the time of trial, he was working part-time on a golf course maintenance crew earning $13.50 an hour.

### B. The Dissolution Proceeding

¶4 Mother petitioned for dissolution in January 2021. She wanted to return to Panama with the children where she testified she has a job waiting for her as a doctor earning $1500 a month. According to Mother, $1500 provides a good standard of living in Panama. Despite that testimony, she also requested $1000 a month in spousal maintenance for five years and child support. Father opposed the relocation and spousal maintenance requests.

2

¶5　　　　The superior court proceedings focused substantially on competing allegations of domestic violence. Both parties sought sole legal decision-making authority based, in part, on allegations that the other committed domestic violence. In particular, both parties alleged the other was abusive and obtained orders of protection against each other in December 2020.

¶6　　　　Father's assertions of domestic violence were to some extent undisputed. Mother pled guilty to criminal damage in 2021 for damaging Father's car after an argument. And while Father also alleged that Mother threw a coffee cup at him, Mother claimed this was in self-defense.

¶7　　　　For her part, Mother claimed that Father controlled where she went, who she spoke to, and all finances, leaving her completely dependent on him. She also stated that he threatened her with deportation when she did not comply. Mother filed police reports alleging that Father physically and sexually assaulted her. Based on these allegations, Mother's immigration application was pre-approved under the Violence Against Women Act (VAWA).

¶8　　　　After a two-day trial, the superior court found it was in the children's best interests to move to Panama with Mother. Although the court recognized that the relocation would be detrimental to Father's relationship, it determined that Father could maintain his relationship by regular video and phone calls and travel to Panama to exercise his parenting time. The court attributed minimum wage income to Father while finding that he had a higher earning capacity. The court awarded Mother $750 a month in spousal maintenance for five years. Under the Child Support Guidelines, A.R.S. § 25-320 app. (Guidelines), Father's child support obligation was zero, but the court found an upward deviation was warranted and ordered Father to pay $250 a month in child support.

¶9　　　　Father timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

I.　　**The Superior Court Did Not Make Findings of Domestic Violence That Are Necessary Under A.R.S. § 25-403.03(D) and Required By A.R.S. § 25-403(B) and Arizona Rule of Family Law Procedure 82.**

¶10　　　　We review the superior court's legal decision-making and parenting time orders, including relocation rulings, for an abuse of discretion. *Layne v. LaBianca*, 249 Ariz. 301, 302 ¶ 5 (App. 2020). "[A]n abuse

of discretion 'is discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 83 ¶ 19 (App. 2005) (citation omitted). An abuse of discretion also exists when the ruling lacks evidentiary support or when the court misapplies the law or a legal principle. *See Woyton v. Ward,* 247 Ariz. 529, 531 ¶ 5 (App. 2019).

¶11 To consider the superior court's legal decision-making and parenting time order, it is helpful to briefly review the statutory framework, under which adjudicated acts of domestic violence guide orders of decision-making and parenting time. Three points are relevant. First, under § 25-403.03(A), the court shall not award joint legal decision-making if it finds "significant domestic violence." Second, under § 25-403.03(D), if the court finds a parent has committed *an act* of domestic violence, a presumption arises that awarding sole or joint legal decision-making to that parent is not in the children's best interests. Importantly here, the presumption in § 25-403.03(D) does not apply if the superior court finds that both parents committed an act of domestic violence. *See* A.R.S. § 25-403.03(D). Third, under § 25-403(B), in a case like this one, in which legal decision-making or parenting time are contested, the court must make specific findings on the record. For these reasons, the operation of the statutory presumptions for or against awarding Father or Mother legal decision-making or parenting time depend on express findings.

¶12 Father does not appeal the superior court's finding that "the [parties' respective] allegations [of domestic violence] do not rise to the level of 'significant' abuse" under § 25-403.03(A). While Father's allegations included the charge that Mother threatened him with a knife, we defer to the superior court's conclusion that whatever the parties proved is not "significant" domestic violence. As such, the mandatory preclusion of joint legal decision-making in § 25-403.03(A) does not apply to either parent. Thus, Father's appeal turns instead exclusively on the superior court's application of § 25-403.03(D). And here, the court's legal decision-making and parenting time order stops short of making findings as to which party or parties committed domestic violence.

¶13 As noted, § 25-403.03(D) contains presumptions that operate differently if one parent but not the other has committed acts of domestic violence. The superior court called Father's and Mother's evidence of domestic violence "allegations," but made no findings as to who, if anyone, committed acts of domestic violence. Were that the end of the story, we would reverse and remand for the superior court to make the required findings as to who committed acts of domestic violence. *See DeLuna v.*

*Petitto*, 247 Ariz. 420, 425 ¶¶ 18–19 (App. 2019) (noting that § 25-403(B) requires findings on the record of all relevant factors in legal decision-making and parenting time cases); *see also Stein v. Stein*, 238 Ariz. 548, 551 ¶ 10 (App. 2015) (explaining that we cannot "infer additional findings necessary to sustain the award" where one party requested Arizona Rule of Family Law Procedure 82 findings the court did not make).

¶14        Here, the record establishes that Mother keyed Father's car and slashed his tires, and that Mother pleaded guilty to violating A.R.S. § 13-1602(A)(1) by that conduct.  Mother asserts that the court's acceptance of her guilty plea did not expressly characterize her conduct as domestic violence.  However, A.R.S. § 13-3601(A) defines violations of § 13-1602 as domestic violence.  The superior court thus erred by failing to find that Mother committed an act of domestic violence under A.R.S. § 25-403.03(D). Although the court's finding that Mother's conduct did not rise to the level of "significant" domestic violence does not altogether preclude it from awarding joint legal decision-making, it does not resolve the rebuttable presumption that arises from that conduct per § 25-403.03(D).  This is particularly so, given the court's acknowledgment of competing "allegations" of such conduct on the part of both parties and the lack of findings to sufficiently address those allegations and their effect upon the presumption.

¶15        On remand, we instruct the superior court to consider whether both parties committed domestic violence, thus negating the rebuttable presumption in § 25-403.03(D) against awarding legal decision-making to Mother.  The court must make findings as to the allegations to complete the analysis required under § 25-403.03(D).  *See* A.R.S. § 25-403(B).

¶16        For these reasons, we vacate the legal decision-making and parenting time rulings and remand for further proceedings consistent with these instructions.  Additionally, if only Mother committed an act of domestic violence, then the court must also make written findings as to § 25-403.03(D), (E), and (F) on remand.  *See DeLuna,* 247 Ariz. at 424–25 ¶¶ 16–19.

## II.    The Relocation, Spousal Maintenance, and Child Support Rulings Are Based on Unsupported Conclusions That Father Can Afford Regular International Travel and Mother Requires Support in Panama.

¶17        Because we vacate the legal decision-making and parenting time orders, the superior court must also reconsider the relocation and child

support orders on remand. Father's appeal raised challenges to these rulings that are likely to arise on remand, so we address them here.

## A. Relocation

**¶18** When relocation is contested, the superior court must decide whether to allow the relocation "in accordance with the child's best interests." A.R.S. § 25-408(G). In determining the children's best interests, the court must consider the factors listed in §§ 25-403(A) and -408(I). *Woyton*, 247 Ariz. at 533 ¶ 12. The parent seeking to relocate has the burden of proving the relocation is in the children's best interests. A.R.S. § 25-408(G). Because the court must consider § 25-403.03 when making its relocation determination, the flawed domestic violence findings also require us to vacate the relocation ruling.

**¶19** The superior court found the following factors weighed in favor of allowing the relocation:

- the children have a good relationship with Mother, whereas they have a "consistent relationship" and the *potential* for a good future relationship with Father under § 25-403(A)(1);

- the move would improve Mother's and the children's quality of life under § 25-408(I)(3);

- Mother is likely to comply with parenting time orders under § 25-408(I)(4);

- a long-distance parenting plan is necessary because Mother cannot support herself in Arizona and Father can maintain consistent contact via telephone and video calls and travel under § 25-408(I)(5);

- the children's physical and mental health needs are met in both communities and "[t]he detriment of moving is in disrupting the relationship to [Father]" under § 25-408(I)(6); and

- relocation will not affect the children's stability because they can stay in contact with Father through in-person and remote visits under § 25-408(I)(8).

The sole factor weighing against the relocation was the finding that the children were adjusted to their home, school, and community in Arizona. Most of the best interests and relocation factors were neutral or did not

apply. *See* A.R.S. §§ 25-403(A)(2), (5), (6), (10) and -408(I)(2) (neutral); A.R.S. §§ 25-403(A)(4), (7), (9), (11) and -408(I)(7) (did not apply).

¶20        The superior court based its relocation decision in part on Father's ability to travel to Panama to maintain his relationship with the children. Father argues the evidence does not support this assumption, particularly because the court also ordered him to pay $750 a month in spousal maintenance for five years and $250 a month in child support instead of the Guideline amount of zero. In the absence of more explicit findings establishing voluntary underemployment, we agree.

¶21        The superior court attributed minimum wage to both parties but found that Father could earn more without indicating how much more. Mother argues Father's testimony that he "once earned an income of $50,000 to $60,000" in property management in California supports the court's orders. But the parties' tax returns showed that the most Father earned since 2018 was $25,000. And according to Father, he could not make that much in Arizona because there are no similar sized properties to manage in Lake Havasu City.

¶22        To be sure, evidence showed that Father was underemployed based on his past employment and education. And there was (disputed) evidence that Father had no housing expenses. But we cannot infer the specific findings necessary to affirm because Father requested written findings of fact. Where a party requests factual findings, as Father did here under Rule 82(a), the "appellate court must be able to discern more than a *permissible* interpretation of the trial court's analysis." *Miller v. Bd. of Supervisors of Pinal Cnty.*, 175 Ariz. 296, 299–300 (1993) (explaining that the superior court's findings must state "*at least* 'the essential and determinative facts on which the conclusion was reached.'") (citation omitted).

¶23        Significantly, Mother agreed that neither party could afford the travel based on their current income levels. She testified that her family would help pay for half the travel costs. In fact, Mother was willing to forego spousal maintenance and child support to allow more opportunity for Father to visit the children. The superior court did not address Mother's concession. Instead, it premised its relocation decision on a finding that Father could earn some unspecified amount more than minimum wage. Compounding the error, the court ordered him to pay $1000 a month in support. Without findings clearly establishing Father's voluntary underemployment and the specific impact thereof, his current financial

circumstances severely limit Father's ability to travel to Panama to exercise parenting time.

**¶24** Father also challenged the findings that relocation would improve the children's quality of life and would not be detrimental to the children's emotional, physical, developmental needs, or stability. *See* A.R.S. § 25-408(I)(3), (6), (8). The parties disputed the impact a move to Panama would have on the children, particularly access to the special services their son needs. The absence of specific findings to support resolution of this conflicting evidence, as would satisfy a request under Rule 82, undermines the court's conclusion.

**¶25** As to whether the move would improve Mother's and the children's lives, *see* § 25-408(I)(3), the superior court found Mother would have better employment prospects and that she "considered the quality of living in a small town, [and] what opportunities exist for herself and the children." Mother's testimony supports the finding. Although Father disagreed, we do not reweigh conflicting testimony. *Hurd v. Hurd,* 223 Ariz. 48, 51 ¶ 16 (App. 2009).

**¶26** Unlike the § 25-408(I)(3) findings, the superior court's findings that the children's needs will be met and they will have stability in Panama, *see* § 25-408(I)(6) and (8), are conclusory and do not include pertinent or comprehensive findings of fact. *See Miller,* 175 Ariz. at 299. We cannot infer these reasons because Father requested written findings. *See id.* On remand the court must provide written findings of fact and conclusions of law consistent with this decision and Rule 82(a).

### B. Spousal Maintenance

**¶27** The superior court ordered Father to pay $750 a month in spousal maintenance to Mother for five years. To support these orders, the court again found Father was underemployed, has financial resources available to him, and has no housing costs. The court did not state how much more Father could earn or explain what additional resources are available to Father. It made no finding as to the value of the rent-free housing. The parties disputed the rental value of the house Father lived in.

**¶28** Furthermore, Mother maintains the relocation was justified because she had a job as a medical doctor with a good salary waiting for her in Panama where she planned to live with her family. At trial and again on appeal, she offered to forego spousal maintenance and child support because the salary she could earn in Panama as a doctor was enough to

provide a good living. The superior court also omitted to address this evidence.

**¶29** The superior court found that Mother will need time to transition to employment in either location. Still, the findings do not sufficiently explain why Mother needs $750 a month for five years based on her testimony that, in Panama, she could work as a doctor immediately and her waiver of financial support if she could relocate. More detailed findings are necessary. Given Father's Rule 82 request, we cannot infer that the court made necessary factual findings. *See Miller*, 175 Ariz. at 299–300. Accordingly, we vacate the spousal maintenance order and remand for further findings.

### C. Child Support

**¶30** Given the disposition in this case, the superior court must reconsider the child support order on remand. If the court again determines that relocation is in the children's best interests, Rule 82(a) requires the court to support any deviation from the Guidelines with written findings.

**¶31** The superior court determined that under the Guidelines, Father's child support obligation was zero, but it ordered an upward deviation to $250 a month. The basis for the deviation was that (1) "the Guidelines do not appropriately account for the varied [parenting time] Father may or may not exercise"; (2) a zero order is not appropriate based on the spousal maintenance award; and (3) Father does not actually pay for his housing and so the self-support reserve test does not accurately reflect Father's ability to pay child support.

**¶32** The first two findings are conclusory and do not support the upward deviation. The superior court could, however, consider that Father has no housing expense in determining his ability to pay a higher child support amount. *See* Guidelines §§ IX(B)(1) (court may deviate when applying the Guidelines is unjust or inappropriate); II(A)(1)(b) (defining "[c]hild [s]upport [i]ncome" broadly to include "income from any source" including "recurring gifts"); *Cummings v. Cummings*, 182 Ariz. 383, 386 (App. 1994) (affirming attribution of mortgage payments as income for mother living in a house rent-free).

**¶33** Father also argues that the superior court failed to consider Guidelines § IX(D)(4), which allows a deviation when the cost of travel to exercise parenting time in combination with the child support may impede the parent's ability to exercise parenting time. Though not raised by Father in the superior court as such, this argument is properly before us because

Mother conceded at trial that the cost of travel to Panama was prohibitive and offered to forego support for that reason. *See Jones v. Respect the Will of the People,* 254 Ariz. 73, 83–84 ¶ 42 (App. 2022) (stating rule of waiver is discretionary). Again, the superior court did not account for Mother's concession in ordering an upward deviation. On remand, the court must consider the cost of travel when determining the appropriate child support order.

**ATTORNEYS' FEES AND COSTS ON APPEAL**

**¶34** Both parties request attorneys' fees on appeal under A.R.S. § 25-324. In the exercise of our discretion and after considering the parties' financial resources and the reasonableness of the parties' positions throughout these proceedings, we decline to award fees on appeal. However, as the successful party on appeal, Father is entitled to his taxable costs upon compliance with ARCAP 21.

**CONCLUSION**

**¶35** We vacate the relocation, legal decision-making, parenting time, spousal maintenance, and child support orders and remand for reconsideration and written findings that comply with A.R.S. § 25-403(B), Rule 82(a), and A.R.S. § 25-403.03(D), (E), and (F), if necessary.

