846 P.2d 831

**In re the Marriage of John Dietrich GALLEGOS, Petitioner/Appellant,**

v.

**Socorro GALLEGOS, Respondent/Appellee.**

**No. 2 CA-CV 92-0008.**

Court of Appeals of Arizona, Division 2, Department A.

June 23, 1992.

Reconsideration Denied July 22, 1992.

Review Denied March 16, 1993.

---

**4.** Pursuant to Article 6, § 3 of the Arizona Constitution, Judge Melvyn T. Shelley of the Arizona Court of Appeals, Division One (now retired), was also designated to and did participate in this matter, but was unable to sign this opinion due to his extended absence from the country.

Waterfall, Economidis, Caldwell, Hanshaw & Villamana, P.C. by James W. Stuehringer and W. Patrick Traynor, Tucson, for petitioner/appellant.

Arthur L. Hirsch, Tucson, for respondent/appellee.

## OPINION

LACAGNINA, Presiding Judge.

John Dietrich Gallegos appeals from a post-dissolution award of increased child support from $450 to $2,136 per month, arguing the trial court abused its discretion in making such an award for the following reasons: (1) the trial court based the increase solely on a mathematical computation, ostensibly required by the Arizona Child Support Guidelines (guidelines), without any consideration of his children's needs; and (2) the trial court used gross income from Gallegos' settlement of his personal injury claim, as required by the guidelines, to increase child support with-

out any consideration or reduction for Gallegos' increased medical and other expenses, necessary to treat his quadriplegic condition. We reverse the increased award for child support and remand for further proceedings. The trial court is directed to make appropriate findings of fact regarding the amount of special medical care and other expenses required and paid by Gallegos from the income he receives from his invested settlement amount, and deduct those expenses from gross income before applying the balance as set forth in the guidelines.

## FACTS

The following relevant facts were found by the trial court in its minute entry:

1. The parties were divorced April 14, 1986. At that time the parties had four minor children whose custody was awarded to respondent subject to reasonable visitation in petitioner. The decree established child support at $400 per month.

2. By order of March 9, 1989, child support was increased to $450 per month where it has remained since that date.

\* \* \* \* \* \*

4. On May 6, 1989, petitioner sustained a devastating injury to his spinal cord which left him with no nerve or muscle function below vertebra no. C–5. As a consequence, petitioner needs physical therapy, recreational therapy, hand and arm therapy, respiratory therapy, psychological counseling, a home health attendant, prescription medications and other medical care. In addition, he needs various items of specialized equipment in his home as well as a special wheelchair and specially modified motor vehicle.

\* \* \* \* \* \*

8. Petitioner instituted suit for his injuries and did in fact effect a recovery of damages by settlement. In December 1990 petitioner received an advance of $371,037.91. Thereafter, on March 12, 1991, petitioner received $1,675,380.06. An additional $250,000 was retained from the settlement proceeds to establish a

reserve in the amount of $200,000 for potential claims for loss of consortium. Any portion of this reserve not used for consortium claims will revert to petitioner.

9. Petitioner has purchased a house adequate for his spatial and treatment needs and a specially modified van. Petitioner has invested the balance of the funds received one-half with New York Life Securities, Inc./Mainstay Series Funds and one-half with Northern Trust Bank of Arizona. Petitioner receives an average of $9,161 per month from these invested funds. In addition, petitioner receives social security income of $733 per month.

10. Socorro Gallegos testified that she works cleaning homes and earns approximately $477 per month. It is clear that she is capable of earning at least minimum wage and the Court attributes that wage to her.

11. Jonathan Ostrowski, M.D. testified at length concerning the treatment needs as well as the risks to the health of the petitioner. This Court's ruling should not be construed in any sense whatever as disputing Dr. Ostrowski's testimony nor is the Court attempting to make a medical judgment. The Court is simply trying to reach an accom[m]odation between petitioner's needs and those of his children. The instant situation simply points up the tension between the medical and legal disciplines.

\* \* \* \* \* \*

13. The child support findings addendum attached to this minute entry are incorporated herein by reference.

Following a hearing on his former wife's order to show cause petition for modification of child support, the trial court ordered Gallegos to pay child support for his three children in the amount of $2,136 per month with credit given for social security payments received by the minor children. The amount of child support awarded was computed by the Child Support Findings Addendum worksheet attached to the minute entry. It shows the trial court computed Gallegos' monthly income to be $9,894 and his former wife's to be $737 for a combined gross income of $10,631. The trial court further computed 21% of $10,631 to be $2,232, the amount shown on the worksheet as the total basic child support obligation. The 1989 schedule for basic child support which the trial court used in computing the total child support obligation, only lists income up to $7,500 per month. The trial court extrapolated from this schedule and determined that because the table computed child support at 21% for $7,500, 21% was also appropriate for $10,-631.[1] The trial court made no findings regarding the needs of the children, nor were any deductions or adjustments made on the worksheet or in the minute entry for the amounts required to satisfy Gallegos' special needs as described by the trial court in its findings.

## DISCUSSION

We agree with John Gallegos that the trial court abused its discretion by awarding child support based solely on the schedule because a strict application of the guidelines is inappropriate and unjust in this case and violates the statutory provisions from which they were enacted. The statute governing child support is A.R.S. § 25–320(A), which provides in part as follows:

A. In a proceeding for dissolution of marriage, legal separation, maintenance, or child support, the court may order either or both parents owing a duty of support to a child, born to or adopted by the parents, to pay an amount reasonable and necessary for support of the child, without regard to marital misconduct. The supreme court shall establish guide-

---

1. The Schedule of Basic Child Support Obligations effective after March 1992 includes combined gross income up to $12,000 per month, and child support on that schedule for three children when the combined gross income is $10,600 = $2,093. The reason for the disparity between the trial court's use of 21% and the recent schedule is the fact that as gross income increases, the percentage of the amount spent for child support decreases. The trial court did not recognize this fact.

lines for determining the amount of child support. The amount resulting from application of these guidelines shall be the amount of child support ordered unless a written finding is made, based on criteria approved by the supreme court, that application of the guidelines would be inappropriate or unjust in a particular case. The supreme court shall review the guidelines at least once every four years to ensure that their application results in the determination of appropriate child support amounts. The guidelines and criteria for deviation from them shall be based on all relevant factors, including:

1. The financial resources and needs of the child.

\* \* \* \* \* \*

5. The financial resources and needs of the noncustodial parent.

6. Excessive or abnormal expenditures,. . . .

The guidelines established by the supreme court are exactly what they purport to be, "guidelines" "to assist the trial courts in applying *the factors set forth in the statute." Schenek v. Schenek,* 161 Ariz. 580, 581, 780 P.2d 413, 414 (App.1989) (emphasis added). The guidelines "are not a source of law, but a source of guidance to the trial courts in the application of the law embodied in the statutes and recorded cases." *In re marriage of Pacific,* 168 Ariz. 460, 463, 815 P.2d 7, 10 (App.1991).

Section 15(a) of the guidelines provides that trial courts may deviate from them, that is, order support in an amount different from that which is provided, only if all of the following five criteria are met:

1. Application of the guidelines is inappropriate or unjust in the particular case,

2. Deviation is in the best interests of the child,

3. The court makes written findings regarding 1 and 2 above,

4. The court shows what the award would have been without the deviation, and

5. The court shows what the award is after deviating.

We note that of the five criteria set forth in the Section 15(a) of the guidelines, three are computations, leaving only two substantive criteria. One is a finding that application of the guidelines is inappropriate or unjust in the particular case, and the other is that the deviation is in the best interests of the child. It is hard to imagine a scenario in which a reduction of child support or child support less than that provided by the schedule could be in the best interests of the child. Because the supreme court was required by § 25–320(A) to consider the factors enumerated in that provision in promulgating the criteria for deviation, the statutory factors still must be considered in conjunction with the factors under the guidelines. Thus, by way of illustration, in determining whether application of the guidelines is inappropriate or unjust in a given case, it is only logical that relevant factors to be considered are the financial resources and needs of the child, the financial resources and needs of the noncustodial parent, any excessive or abnormal expenditures and the other factors set forth in § 25–320(A). The legislature intended the guidelines promulgated by the supreme court to be the embodiment of the statute with respect to criteria for deviating from the guidelines, not the abolishment of those factors. With the relevant criteria and factors in mind, we now turn to the trial court's order in this case.

The record shows that this is precisely the kind of case where it would be inappropriate or unjust to follow the guidelines. In so doing, the trial court failed to consider the relevant criteria for deviating from the guidelines. While the statutory factors are also required to be the basis for the amounts of child support under the guidelines, the guidelines contemplate the ordinary as opposed to extraordinary situation. We find inconsistent the trial court's acknowledgment of Gallegos' needs and risks to his health and its statement that the court was trying to reach an accommodation between Gallegos' needs and those of his children on the one hand, and its subsequent failure to make any adjustment whatsoever for Gallegos' monthly medical costs that the evidence shows could exceed

$6,000 per month. Gallegos suffered serious injuries which left him quadriplegic. The amount he received in settlement of his personal injury claim was to reimburse him for the extraordinary expenses he would incur to maintain an appropriate level of functioning during his lifetime. While his injury does not relieve him from his obligation to pay child support, it does require a determination of the necessary medical, drug and special care expenses Gallegos incurs each month in calculating his child support obligation. Such amounts should be deducted from his gross income in determining his income to calculate the child support obligation under the schedule of basic child support.

Another relevant factor which the trial court ignored is the financial resources and needs of the children, as the following testimony from the order to show cause hearing shows:

Q On your affidavit, do you have a copy of that in front of you, the spousal affidavit?

A Yes.

Q The most recent one, current one, not the one from back in '89.

A I have a copy.

Q Yes, that one.

And that shows certain expenses for a house payment, repair and maintenance, utilities, food, lunches, clothing, all sorts of expenses. Do you actually pay those expenses?

A No. Some of them I do, not all of them.

Q Are these what you would estimate your expenses would be if you could afford to pay them?

A Yes.

Q How much do you actually pay or would it cost you if you had the money to feed you and the three children; not John Sr. or John Jr., but the two little girls and Marc?

MR. TRAYNOR: I object. If she hasn't been doing this and hasn't been spending the money and if they have been eating on a certain amount of funds for a period of time, to say now what would it cost you for something different requires speculation.

THE COURT: *Also, we calculate child support based upon gross income.*

MR. HIRSCH: I'm sorry?

THE COURT: *We calculate child support based upon gross income.*

MR. HIRSCH: I realize that.

THE COURT: *What is the point of all of these questions about her expenses?*

MR. HIRSCH: I will get on to something else.

THE COURT: Okay.

[Emphasis added.]

The trial court's view that it was bound to only the guidelines and schedule without regard to the statutory factors encompassed in the guidelines perhaps explains the absurdity that resulted when it awarded $2,136 for child support in the face of an affidavit of the mother asking for only approximately $1,500 per month as an amount she had never spent but could spend if she had it. The trial court must, as mandated by § 25–320 and in accordance with the guidelines as well, consider the excessive and abnormal expenditures John Gallegos must make for his daily requirements before resorting to the automatic use of the guidelines to establish gross income and a total basic child support obligation.

Reversed and remanded for further proceedings consistent with this opinion.

LIVERMORE, C.J., and HOWARD, J., concur.