224 P.3d 997

**In re the Marriage of Joanne Linton STRAIT, Petitioner/Appellee,**

**v.**

**Clifford Caesar STRAIT, Jr., Respondent/Appellant.**

**No. 1 CA–CV 08–0721.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 11, 2010.

Clarke Law Firm, PLC By Marilee Miller Clarke, Scottsdale, Attorneys for Petitioner/Appellee.

Bruce K. Childers, Ltd. By Bruce K. Childers, Scottsdale, Attorneys for Respondent/Appellant.

## OPINION

PORTLEY, Judge.

¶ 1 Clifford Strait ("Father") appeals from a post-decree order modifying child support. He argues that the family court erred in considering a one-time insurance settlement as income. For the following reasons, we vacate the order and remand for further consideration.

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 Father and Joanne Linton Strait ("Mother") married in 1984. When the marriage was dissolved in 1996, the parties stipulated that Father would have sole custody of their five children.

¶ 3 Mother successfully requested modification of the child custody arrangement in 2005, and was granted joint legal custody. At that time, the court ordered Father to pay $381.69 per month for child support. Mother successfully petitioned for modification of child custody, parenting time, and child support in 2007. The court found Father's income to be $20,000 per month and ordered him to pay $1800.18 per month for child support.[1] He did not appeal the order.

¶ 4 On March 31, 2008, however, Father sought to modify child support on grounds that the assumptions that underlay the court's prior orders were faulty. At the evidentiary hearing, he testified that after the divorce he purchased a family home in 1999. The home subsequently developed a "slab leak" in 2000. As a result, mold grew and forced the family to relocate. He also testified that he was involved in litigation with State Farm Insurance ("State Farm")

---

1. Father was ordered to pay $1947.92 per month for March, April, and May, 2007. His obligation was reduced to $1800.18 per month effective June 1, 2007, when one of the three remaining minor children was emancipated.

for seven or eight years and that "fix[ing] [the] house" would have cost "several hundreds of thousands of dollars." He settled his lawsuit with State Farm in 2008 for $168,000.

¶ 5 The family court found that it was "appropriate to use the $168,000 award from State Farm in calculating child support."[2] The court consequently found Father's "gross income" to be $168,000 per year, or $14,000 per month. The court did not include any other source of income in its analysis.[3] As a result, the court ordered Father to pay $1726.64 per month in child support from April 1, 2008, through May 31, 2009, and $1357.52 per month effective June 1, 2009, after another of his children became emancipated.[4] Father appealed, and we have jurisdiction pursuant to A.R.S. § 12–2101(E) (2003).

## DISCUSSION

¶ 6 We review the modification of a child support order for an abuse of discretion. *Jenkins v. Jenkins*, 215 Ariz. 35, 37, ¶ 8, 156 P.3d 1140, 1142 (App.2007). We review findings of fact under a clearly erroneous standard; "however, we draw our own legal conclusions from facts found or implied in the judgment.' " *Engel v. Landman*, 221 Ariz. 504, 510, ¶ 21, 212 P.3d 842, 848 (App. 2009) (quoting *McNutt v. McNutt*, 203 Ariz. 28, 30, ¶ 6, 49 P.3d 300, 302 (App.2002)).

Finally, we interpret the Arizona Child Support Guidelines, A.R.S. § 25–320 app. (2007) (the "Guidelines"), de novo. *Hetherington v. Hetherington*, 220 Ariz. 16, 21, ¶ 21, 202 P.3d 481, 486 (App.2008).

¶ 7 Father contends that the family court abused its discretion in finding his income to be $14,000 per month. Specifically, he argues that the error occurred when the court characterized his insurance settlement as income.[5]

¶ 8 Generally, a court may order reasonable and necessary child support based upon the parents' financial resources, and may "consider all aspects of a parent's income" to ensure the award is just and "based on the total financial resources of the parents." *Cummings v. Cummings*, 182 Ariz. 383, 386, 897 P.2d 685, 688 (App.1994). The Guidelines broadly define the term "[g]ross income" as "income from *any* source." Guidelines § 5(A) (emphasis added). Section 5(A), however, states that "[i]ncome from any source which is not continuing or recurring in nature need not necessarily be deemed gross income for child support purposes." "[G]ross income for child support purposes is not determined by the gross income shown on the parties' income tax returns, but rather on the actual money or cash-like benefits received by the household which is available for expenditures." *Cummings*, 182 Ariz. at 385, 897 P.2d at 687.

2. Initially, the court did not explain its ruling. However, while the appeal was pending, the court issued findings of fact regarding Father's income. We consider the findings because the parties consented, and they were made in furtherance of the appeal. *See Burkhardt v. Burkhardt*, 109 Ariz. 419, 421, 510 P.2d 735, 737 (1973) (noting that the superior court loses jurisdiction when a case is appealed "except in regard to matters which will be in furtherance of the appeal").

3. The court found that until Father replaces certain molds that were stolen from his plastic manufacturing business, "Father will have no income from [the] business." It also found that the availability of the settlement "meant Father did not have to diligently pursue replacing molds for his plastic manufacturing business." The court did not, however, decide whether Father's lack of

job-related income was voluntary, nor did it attribute job-related income to Father. *See* Ariz. Rev.Stat. ("A.R.S.") § 25–320 app. § 5(E) (2007) (stating that if a parent is working below full earning capacity or unemployed as a matter of choice and without reasonable cause, the court may attribute income to that parent).

4. Despite having annualized the entire corpus of the insurance settlement over a one-year period, the court then ordered child support based on the $14,000 income determination for a greater period than one year. However, because we vacate the modified child support order, we decline to address this issue.

5. Father also raises a variety of other arguments. However, in light of the family court's supplemental findings, those arguments are moot.

¶ 9 Despite the broad language used in the Guidelines, A.R.S. § 25–320(D) permits a court to deviate from them when their "application ... would be inappropriate or unjust in a particular case." In deciding whether to deviate from the Guidelines, a court must consider, in part: (1) "the [f]inancial ... needs of the noncustodial parent"; and (2) "[e]xcessive or abnormal expenditures." A.R.S. § 25–320(D) (2007).

¶ 10 We applied these principles in the context of a personal injury settlement in *Gallegos v. Gallegos*, 174 Ariz. 18, 846 P.2d 831 (App.1992). There, a father settled a personal injury claim and received two payments totaling nearly two million dollars. *Id.* at 19–20, 846 P.2d at 832–33. On a petition to modify the amount of child support, the family court included the entire amount of the settlement in the father's income and ordered the child support payment increased accordingly. *Id.* at 20, 846 P.2d at 833. We reversed and held that:

> The amount [the father] received in settlement of his personal injury claim was to reimburse him for the extraordinary expenses he would incur to maintain an appropriate level of functioning during his lifetime. While his injury does not relieve him from his obligation to pay child support, it does require a determination of the necessary medical, drug and special care expenses [the father] incurs each month in calculating his child support obligation. Such amounts should be deducted from his gross income in determining his income to calculate the child support obligation under the schedule of basic child support.

*Id.* at 22, 846 P.2d at 835. We concluded that "the trial court abused its discretion ... because a strict application of the guidelines [was] inappropriate and unjust ... and violate[d] the statutory provisions from which they were enacted." *Id.* at 20, 846 P.2d at 833. We remanded for a determination of what portion of the settlement was properly

considered as income. *Id.* at 22, 846 P.2d at 835.

¶ 11 In this case, like in *Gallegos*, the family court did not consider the nature of the settlement payment. There was no evidence that the payment was to reimburse Father for the mold damage, to reimburse him for expenses incurred as a result of the mold, to provide funds to remediate the problem, or as a settlement for bad faith or some other claim. Although the parties presented evidence of the one-time settlement with State Farm, neither party presented evidence explaining the purpose of the settlement or clarifying the details of Father's litigation. It would be unjust to consider the entire amount of the one-time settlement payment as "gross income" if all, or some of the payment, represented a recoupment of lost capital or represented funds needed to remediate the property damage. Similarly, it would also be improper to consider the entire settlement corpus as "gross income" without determining and offsetting any amount of litigation expenses incurred during Father's case against State Farm.[6]

¶ 12 By way of example,[7] consider a noncustodial father who purchases a house after divorce. The house burns down a few years later due to faulty wiring, and he loses the home and all of his personal property. He sues his property insurer, and the parties eventually settle. Although a one-time payment could be considered as "gross income" under the Guidelines, it would be unjust under A.R.S. § 25–320(D) to strictly follow the Guidelines and include the full settlement payment in the father's "gross income" without any consideration of the nature of the settlement proceeds. Although the father could choose to use the settlement proceeds for expenditures and living expenses, the settlement may represent, in whole or in part, a recoupment of capital (the value of the house and personal property) which, but for the destruction of his property, would not be considered or available for child support pur-

---

6. For example, if Father has to pay court costs or attorneys' fees from the settlement amount, those amounts would not be income.

7. *See In re Andrew C.*, 215 Ariz. 366, 370, ¶ 21, 160 P.3d 687, 691 (App.2007) ("Frequently, hypothetical examples shed light on the viability, or lack thereof, of an asserted legal principle.").

poses. *Cf. Scott v. Scott,* 121 Ariz. 492, 495, 591 P.2d 980, 983 (1979) (finding that "[a] transformation of ... assets from one form to another is not, in and of itself, a changed circumstance").

¶ 13 Other jurisdictions have taken a similar position. *See Villanueva v. O'Gara,* 282 Ill.App.3d 147, 218 Ill.Dec. 105, 668 N.E.2d 589, 592–93 (1996) (holding that "a distinction exits between 'income' and recoupment of capital" and to the extent that a products liability settlement compensated the recipient for disability, disfigurement, pain, suffering, and reasonable past and future medical expenses, it did not constitute income, rather those portions of the award served to restore the "status quo" prior to the injury); *Taranto v. Mo. Dep't of Soc. Servs.,* 962 S.W.2d 897, 901–02 (Mo.Ct.App.1998) ("[I]n some cases unfairness could result if the court considers 100% of personal injury settlement payments in determining a parent's child support obligations.... [I]n many cases a part of those payments is intended to reimburse the recipient not just for lost income, but also for past and future medical expenses and pain and suffering. If these payments are all included in gross income and must be used to pay child support, then the recipient may not have sufficient money left to pay future medical expenses."); *In re Marriage of Durbin,* 251 Mont. 51, 823 P.2d 243, 249 (1991) (finding that the entire amount of a personal injury settlement did not constitute income for purposes of deciding whether to increase child support), *abrogated on other grounds by In re Marriage of Kovash,* 270 Mont. 517, 893 P.2d 860 (1991), *and In re Marriage of Cowan,* 279 Mont. 491, 928 P.2d 214 (1996); *Mehne v. Hess,* 4 Neb.App. 935, 553 N.W.2d 482, 487 (1996) (concluding that the entire amount of a personal injury settlement should be considered for child support because the settlement "in large measure, was intended to compensate Mehne for the significant lost wages and future wage loss which he sustained"); *In re Jerome,* 150 N.H. 626, 843 A.2d 325, 330 (2004) (noting that, in the case of personal injury settlements, under New Hampshire law, courts can deviate from the uniform guidelines when "applying them would result in a confiscatory support order"); *Arneson v. Arneson,* 670 N.W.2d 904, 917, ¶ 36 (S.D.2003) ("Counting all [funds in a structured personal injury settlement] as income for child support purposes may be unfair ... though excluding all of it ... is clearly unfair to [the] child."); *Whitaker v. Colbert,* 18 Va.App. 202, 442 S.E.2d 429, 431 (1994) (holding that the child support statute applies to "income, not to capital recoupment" and concluding that the portion of a settlement intended to compensate for damages is "capital" in nature and should be excluded).

¶ 14 On the factual record before us, we find that the family court was unable to properly consider the purpose and nature of the settlement proceeds, whether Father is still shouldering the financial burden caused by the mold damage, or the net amount received. Nor did the court determine whether to attribute income to Father pursuant to Guidelines § 5(E). Accordingly, we remand for the family court to consider these matters and, if necessary, the § 25–350(D) deviation criteria.

## CONCLUSION

¶ 15 For the foregoing reasons, we vacate the post-decree child support order and remand the matter for further consideration consistent with this opinion.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge, and DANIEL A. BARKER, Judge.