NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

ANN D. CLARK, *Petitioner/Appellee,*

*v.*

RICHARD A. CLARK, *Respondent/Appellant.*

No. 1 CA-CV 15-0068 FC

FILED 03-22-2016

Appeal from the Superior Court in Maricopa County
No.  FC2012-093630
The Honorable Bethany G. Hicks, Retired Judge

**AFFIRMED**

COUNSEL

By Scott L. Patterson, Tempe
*Counsel for Petitioner-Appellee*

Johnson Hendrickson & Lallis, PLLC, Mesa
By David Johnson
*Counsel for Respondent-Appellant*

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which
Presiding Judge Diane M. Johnsen and Judge Kent E. Cattani joined.

**G E M M I L L**, Judge:

¶1        Richard Clark ("Father") appeals the family court's decree modifying child support.  For the following reasons, we affirm.

## BACKGROUND

¶2        In 2012, Ann Clark ("Mother") filed a petition for dissolution of her marriage to Father.  A default decree was entered against Father in December 2012, along with a child support order and parenting plan concerning the couple's two children.  Primary physical custody of the children was awarded to Mother, and Father was ordered to pay child support in the amount of $1013.48 per month, commencing January 1, 2013.

¶3        After the divorce, Father relocated to New York to seek employment and found a job in September 2013.  In March 2014, Father filed a petition to modify his child support obligation, alleging he was earning $3464 per month and his relocation and new employment constituted a substantial and continuing change in circumstances.  The family court granted a hearing, and decreased Father's child support obligation to $619.04 per month, effective September 1, 2014.  The family court ordered that Father be allowed to claim one of the children as a dependent on his income taxes two out of every three tax years, conditioned upon payment in full of all current support obligations and arrearage payments.  The court also found, however, that Father had failed to make any child support payments and entered judgment for more than $20,000 in arrearages due Mother.  Finally, the court awarded Mother her attorney fees and costs, finding that Father had taken unreasonable positions throughout the litigation.

¶4        Father timely appealed the order modifying child support. We have jurisdiction under Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(5).

## DISCUSSION

¶5        Because our resolution of the attorney fees issue merits publication, we have addressed that issue in a published opinion issued contemporaneously with this unpublished memorandum decision. We address all other issues on appeal in this decision. *See* ARCAP 28(c); Ariz. R. Sup. Ct. 111(h).

I.      **Calculation of Mother's Gross Monthly Income**

¶6          First, Father argues that the family court erred in calculating Mother's gross income under the Child Support Guidelines, A.R.S. § 25-320 ("Guidelines"). Father contends the Court's calculation is clearly erroneous because it does not include all of Mother's income from her secondary employment. A decision to modify an existing child support award is within the "sound discretion" of the family court, and, "absent an abuse of that discretion, will not be disturbed on appeal." *Jenkins v. Jenkins*, 215 Ariz. 35, 36, ¶ 8 (App. 2007); *see also Strait v. Strait*, 223 Ariz. 500, 502, ¶ 6 (App. 2010). We review de novo, however, the family court's application of the Guidelines. *Engle v. Landman*, 221 Ariz. 504, 510, ¶ 21 (App. 2009).

¶7          Mother is employed as a dental hygienist at two different dental practices. At the first practice, Mother is required to be present during specific hours, but is paid only for the hours during which her patients are actually present. Mother consistently averages 27 hours per week and earns $43 per hour. Mother also works with a second dental practice at which she earns $41 per hour. Her hours there are "variable" depending on need, but do not exceed 13 hours per week. She generally works at the second practice at most only one day per week and sometimes not at all.

¶8          On her Affidavit of Financial Information (AFI), Mother listed her total gross monthly income as $4,718.31. At the hearing, Mother testified that as of April 20, 2014, she had earned approximately $24,048, which reflects significantly more income per month than the amount shown on her AFI. After considering the evidence presented at the hearing and Mother's AFI, the family court found that Mother's gross monthly income was $4,876.20.

¶9          Father argues the family court misapplied the Guidelines by failing to consider the entirety of Mother's earnings from both her jobs in calculating her gross monthly income. In relevant part, the Guidelines provide as follows:

> Gross income includes income from any source . . . . Income from any source which is not continuing or recurring in nature need not necessarily be deemed gross income for child support purposes. Generally, the court should not attribute income greater than what would have been earned from full-time employment. Each parent should have the choice of

working additional hours through overtime or at a second job without increasing the child support award. The court may, however, consider income actually earned that is greater than would have been earned by full-time employment if that income was *historically earned from a regular schedule* and is anticipated to continue into the future.

The court should generally not attribute additional income to a parent if that would require an extraordinary work regimen. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours and working conditions.

Guidelines § 5(A) (emphasis added).

**¶10** Father claims that because Mother's income from her second job is regular and recurring, it should be included, in its entirety, in her gross monthly income. At the hearing, however, Mother testified that she has worked for the second practice for less than one year and that her work there is on an as-needed basis and not consistent. The family court could have found, therefore, that this additional income was not "historically earned from a regular schedule." *See* Guidelines § 5(A).

**¶11** Father also asserts that Mother's second job does not constitute "overtime," because her total working hours do not exceed 40 hours per week. In support, Father cites *McNutt v. McNutt*, 203 Ariz. 28 (App. 2002), in which this court held that employment exceeding 40 hours per week did not necessarily include overtime. Father argues that, accordingly, a work week of less than 40 hours must necessarily be considered less than full-time.

**¶12** We disagree, because in some situations full time employment may constitute less than 40 hours per week. *McNutt* explained that the 40-hour work week is an "artificial construct." *Id.* at 32, ¶ 15. Rather than strictly applying the number of hours worked to determine what is or is not full-time employment, *McNutt* looked to the nature of the job and what constituted a "regular schedule" for the type of employment in question. *Id.* at ¶ 14. Similarly, the Guidelines require that the court consider all relevant factors surrounding the employment to determine a "reasonable work regimen." Guidelines § 5(A).

¶13        Although the record does not compel the family court's conclusion in this case, the court did not abuse its discretion when it found that Mother's primary job is in fact full-time employment, even though it consists of less than 40 hours compensable time per week. Consistent with the Guidelines, the family court attributed to Mother an income consistent with full-time employment while still allowing her the choice to seek supplemental income from additional sources. *See* Guidelines § 5(A); *see also McNutt*, 203 Ariz. at 32, ¶ 17 (explaining that a child support award should "leave to each parent the choice of working additional hours—whether overtime or at a second job—without exposing that parent to the 'treadmill' effect of an ever-increasing child support obligation"). Given Mother's testimony about the nature of her employment, the court did not abuse its discretion when it determined that her primary job constituted full-time employment.

¶14        Although we are not able on this record to determine precisely how the family court calculated Mother's gross monthly income, there was substantial evidence presented at the hearing to support the amount it ultimately attributed to Mother. *See Kocher v. Dep't of Revenue*, 206 Ariz. 480, 482, ¶ 9 (App. 2003) (explaining that a finding of fact is not clearly erroneous if substantial evidence supports it, even when substantial conflicting evidence also exists). The court's determination of Mother's gross income for full-time employment is supported by her testimony regarding the consistent hours in her primary position, coupled with the requirement that she be present during specified hours even if there were no patients for whom she would be compensated, plus the lack of consistency in the availability of hours for which she could be compensated at her additional job. In addition, the family court found that Mother's gross income was greater than the amount listed on her AFI. Because the amount ultimately determined by the court is supported by reasonable evidence, the family court did not err in calculating Mother's gross monthly income.

## II.    <u>Start Date of Child Support Modification</u>

¶15        Next, Father asserts the court erred when it delayed the start date of the child support modification. He argues that the court's determination that a later start date was in the best interests of the children is insufficient to constitute "good cause" for a delayed modification under A.R.S. § 25-503.

¶16 Under A.R.S. § 25-503(E), modifications of child support obligations are presumptively "effective on the first day of the month following the petition for modification." The court may order the change effective on a different date, however, for "good cause shown." A.R.S. § 25-503(E). Father's petition for modification was filed in March 2014, making the presumptive start date for the modification April 1, 2014. The family court determined, however, that it was "in the children's best interest" to delay the modification, making it effective September 1, 2014.

¶17 Father argues that the best interests of the children is not sufficient to constitute "good cause" to delay modification, because it will arguably always be in the best interests of the children to delay a reduction in child support payments. We disagree. The paramount concern in family law proceedings involving children is the best interests of those children. *See Engle v. Landman*, 221 Ariz. 504, 514, ¶ 38 (App. 2009). Furthermore, a modification to child support does not automatically serve the best interests of a child simply because it increases the amount of money the children receive. *Cf. Nash v. Nash*, 232 Ariz. 473, 479 n.8, ¶ 22 (App. 2013) (explaining that child support in excess of the standard needs of the children is not necessarily in children's best interests). Other considerations, such as the parent's ability to pay and the standard of living to which the children are accustomed, also factor into the best interests determination. *Id.*

¶18 Although the family court did not make an express finding of good cause for departing from the presumptive April 1 start date, the court specifically found that a delayed start date was in the children's best interests. Father did not request detailed findings, and there is nothing in the record to contradict the court's determination that delaying the modification serves the children's best interests. The court acted within its discretion when it chose September 1, 2014 as the start date for the child support modification.

## III.  Child Support Tax Credits

¶19 Next, Father argues the family court erred as a matter of law when it barred him from claiming child tax credits on his federal income taxes until he has paid his child support arrearages in full. We review de novo the family court's application of the Guidelines, *Engle*, 221 Ariz. at 510, ¶ 21, and interpret the Guidelines in the same way as statutes, *Patterson v. Patterson*, 226 Ariz. 356, 358, ¶ 4 (App. 2011).

¶20         The relevant portion of Section 27 of the Guidelines, addressing the family court's role in allocating federal tax exemptions, provides:

> The court may *deny the right to present or future tax exemption when a history of nonpayment of child support exists*. The allocation of the exemption may be conditioned upon payment by December 31 of the total court-ordered monthly child support obligation for the current calendar year and *any court-ordered arrearage payments due during that calendar year for which the exemption is to be claimed*. . . . If the noncustodial parent has paid the current child support, but has not paid the court-ordered arrearage payments, *the noncustodial parent shall not be entitled to claim the exemption*.

(Emphasis added.)  Father argues the family court erred in ordering him to pay the entirety of his arrearage payments before claiming the child income tax credit.  He asserts that because the Guidelines condition the allocation of tax exemptions on payment of child support arrears due "during that calendar year for which the exemption is to be claimed," the court erred by requiring him to pay all of the arrearages and not just those attributable to the year for which he is claiming a tax exemption.

¶21         The language cited by Father, however, does not represent the entirety of the Guidelines for the dependent child tax exemption.  The first sentence of the portion of Section 27, quoted above, broadly authorizes the court in its discretion to "deny the right to present or future tax exemption when a history of nonpayment of child support exists."  The record here demonstrated such a "history of nonpayment."  The last sentence also provides that a noncustodial parent who has not paid the court-ordered arrearage payments is not entitled to claim the tax exemption, even if he or she is current in child support.  We conclude, therefore, the plain language of the Guidelines supports the family court's order in this case. *Cf. New Sun Bus. Park v. Yuma Cty., LLC*, 221 Ariz. 43, 46, ¶ 12 (App. 2009) (explaining that the "plain language" of a statute is the best indicator of its meaning). The court did not err.

## IV.    Travel Costs

¶22         Finally, Father argues the family court erred by taking "judicial notice" of  Mother's inability to pay travel expenses for the children's parenting time visits with Father.  Facts may be judicially noted

when they are "so notoriously true as to not be subject to reasonable dispute." *In re Anthony H.*, 196 Ariz. 200, 201 (App. 1999) (quoting *State v. Lynch*, 115 Ariz. 19, 22 (App. 1977)).

¶23 After the dissolution decree was entered, Father moved from Arizona to New York to pursue employment. In the initial Child Support Order, the family court ordered Father to pay 95 percent of travel expenses related to his parenting time with the children. At the hearing on Father's petition to modify, Father argued that the money he paid for plane tickets should be counted toward his child support obligations. While attempting to elicit testimony from Mother on this subject, the following exchange occurred:

> [FATHER'S COUNSEL]: Or sometimes [Father] flies them to see -- the girls to see him?
>
> [MOTHER]: Uh-huh.
>
> [FATHER'S COUNSEL]: Do the girls get a benefit from that?
>
> [MOTHER]: Yes.
>
> [FATHER'S COUNSEL]: It's important for them to have that parenting time?
>
> [MOTHER]: They enjoy their time with him.
>
> [FATHER'S COUNSEL]: Do you contribute at all to those flights there?
>
> [MOTHER]: No, that's his job, that's his -- what he does.
>
> [FATHER'S COUNSEL]: Okay. Do you think he should get any credit for that being his job, he's paid $5,126.88 in the last 14 months, should he be given any credit for that?
>
> [MOTHER]: For his visitation with them, yeah.
>
> [MOTHER'S COUNSEL]: Can you clear that -- are you talking about for child support, in lieu of child support?

[FATHER'S COUNSEL]: No, I'm just asking what she thinks is appropriate in providing for the kids.

[MOTHER]: Yes, they need to see him.

[FATHER'S COUNSEL]: But you haven't contributed to that?

[MOTHER]: No, I don't get any child support, I don't have the money to do that.

[FATHER'S COUNSEL]: Do you -- how much money did you make last year?

[MOTHER]: I don't know.

[FATHER'S COUNSEL]: Between both of your jobs?

[MOTHER]: You know, I -- truthfully, I don't know.

THE COURT: I think we've been over this and I don't know how it's relevant to the issue --

[FATHER'S COUNSEL]: Well, she just --

THE COURT: -- of child support arrearages.

[FATHER'S COUNSEL]: Your Honor, she just indicated she doesn't have money to contribute to plane tickets that --

THE COURT: The Court will take judicial notice that she does not have money to contribute to plane tickets and I don't think that's relevant.

¶24        We agree with Father that Mother's inability to contribute to the cost of transportation was not a fact of which it was proper for the court to take judicial notice.   Nevertheless, we do not find that this purported taking of judicial notice prejudiced Father.  Father did not, in his petition or at the hearing, request that the court modify its allocation of travel expenses, nor does the court's order modifying child support reference such expenses.  Furthermore, any discussion during the hearing regarding travel costs focused on determining the amount of Father's child support arrearages, not on the allocation of travel costs.  Any error from the court's

use of the term "judicial notice" in reference to travel expenses was therefore harmless and of no consequence to the issues contested by Father.

**CONCLUSION**

**¶25**　　　　We find no reversible error in the family court's order. For these reasons and for those set forth in the accompanying published opinion, we affirm.

**¶26**　　　　Both Father and Mother request awards of attorney fees on appeal. Father's request is based on A.R.S. §§ 25-324 and -503(E), and Mother's request is based on § 25-324. We have considered the criteria established under both statutes, and in our discretion we decline to award fees to either party. As the prevailing party on appeal, Mother is entitled to an award of taxable costs contingent upon her compliance with Arizona Rule of Civil Appellate Procedure 21.



Ruth A. Willingham · Clerk of the Court
F I L E D : RT