NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

KAREN CHOY LAN YEE, *Petitioner/Appellant*,

*v.*

MARTIN WAYNE YEE, *Respondent/Appellee*.

No. 1 CA-CV 19-0169 FC
FILED 1-23-2020

Appeal from the Superior Court in Maricopa County
No. FC2008-007465
The Honorable Katherine M. Cooper, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED IN PART;
REMANDED**

COUNSEL

Moshier Law Firm PLLC, Scottsdale
By Trail T. Potter
*Counsel for Petitioner/Appellant*

Burt Feldman & Grenier PLC, Scottsdale
By Mary K. Grenier
*Counsel for Respondent/Appellee*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Samuel A. Thumma joined.

---

**B R O W N**, Judge:

¶1          Karen Choy Lan Yee ("Mother") appeals from the superior court's orders finding her in contempt for failing to reimburse Martin Wayne Lee ("Father") for a portion of the expenses he incurred on behalf of their son, R.Y., and awarding Father attorneys' fees.  For the following reasons, we vacate the orders and remand for further proceedings consistent with this decision.

## BACKGROUND

¶2          Father and Mother were divorced in 2009.  They have two children, J.Y., who is no longer a minor, and R.Y., who is now 17.  The consent decree of dissolution stated in part that "Father shall provide health insurance coverage for the minor children, unless otherwise agreed upon by the parties, in writing.  Any health expenses not covered by such insurance shall be divided equally between the parties."

¶3          In 2013, the parties agreed to modify the decree.  The resulting stipulated order modified the amount of child support paid by Father and included a provision stating that both parties, if they chose to do so, could carry medical, dental, and vision insurance for the children.  The order further stated, "Both parents will present both insurance coverage[s] to any major provider to allow for maximum coverage.  This provision does not apply to routine medical or dental care where co[-]payments are the only payment required."  At the time the 2013 order was entered Mother and Father had equal parenting time.

¶4          In January 2015, the parties again stipulated to modify the decree.  As confirmed in the order approving the stipulation, Mother and Father agreed they would have joint legal medical decision-making concerning R.Y., with Father having the final say over choice of the provider.  In a lengthy paragraph that appears to be internally inconsistent at times, this stipulated order provided that Father was to make appointments for R.Y. during his parenting time if it was possible to do so.

Father also agreed to provide Mother a copy of his health insurance card for R.Y. if she needed to take R.Y. to an appointment. The order stated that Father's "Blue Cross Blue Shield Insurance must be used for all medical appointments, and Mother understands she should never incur a cost pursuant to these terms." In a separate paragraph, the order explained that as to payment of medical costs, the parties anticipated that Father would pay "all up front, out of pocket costs." The order then outlined the procedures to be followed by *both parties* for such costs, and the percentage allocations (Father 70%, Mother 30%), recognizing that Mother could seek reimbursement, but it was unlikely she would incur any "up front, out of pocket [medical] costs." The order then confirmed that "[b]oth parties are entitled to review the insurance explanation of benefits to verify actual amounts paid by the other party."

¶5        In July 2015, the superior court entered another stipulated order. The order obligated Mother to pay 40% and Father 60% of the children's uncovered medical, dental, and vision costs, and "the cost of any activities for the child or extraordinary expenses." The order included a revised process for the parties to reimburse each other for such expenses, now on a quarterly basis, and stated that a failure to timely reimburse could result in sanctions. The party seeking reimbursement was required to send receipts to the other party no later than 15 days following the end of each quarter. The order was silent about billing Mother's insurance for otherwise unreimbursed medical expenses.

¶6        Father timely sent Mother receipts over the course of several years. Mother failed to reimburse Father, and in 2018, he filed a petition to enforce the July 2015 order. In her answer, Mother asserted that Father should have submitted any uncovered medical expenses to her insurance and because the summer camps Father paid for were too expensive, she should not have to pay anything towards them. Also, in 2018, Father filed a petition to enforce a provision of the parties' 2009 consent decree requiring Mother to deposit $20,000 in the children's 529 education accounts and name Father as co-custodian ("529 petition").

¶7        The superior court consolidated the two petitions and held an evidentiary hearing. Before the hearing, Mother provided Father with satisfactory information about the 529 accounts, and Father withdrew the 529 petition. Following the hearing, the court found that the July 2015 order was controlling, that Father had timely sent receipts to Mother, and she had deliberately refused to pay. The court determined that the July 2015 order "says nothing about EOBs [explanation of benefits], billing the other party's insurance, or other requirements. It . . . imposes no obligation on the

sending party in addition to providing receipts quarterly . . . ." The court found Mother in contempt of the July 2015 order and ordered her to pay Father $10,208.68 (the entire $12,423.88 requested by Father minus $2,215.20 for R.Y.'s school trip to Europe).

**¶8** The superior court also found that Father was entitled to reasonable attorneys' fees on both petitions and directed Father to submit a *China Doll* affidavit. After awarding fees and costs to Father, the court denied both parties' request to supplement the July 2015 order as to the reimbursement procedures.

**¶9** Mother timely appealed, but we do not have jurisdiction over appeals from civil contempt orders. *Danielson v. Evans*, 201 Ariz. 401, 411, ¶ 35 (App. 2001). In the exercise of our discretion, however, we treat Mother's appeal from the contempt order as a petition for special action and accept jurisdiction to review whether the superior court had jurisdiction to find Mother in contempt. *Id.*; A.R.S. § 12-120.21(A)(4).

## DISCUSSION

**¶10** Mother argues the superior court erred by (1) failing to enforce the 2013 order, (2) failing to enforce the January 2015 order, and (3) awarding Father attorneys' fees and costs. We review a finding of civil contempt for an abuse of discretion. *Munari v. Hotham*, 217 Ariz. 599, 605, ¶ 25 (App. 2008). We accept the court's factual findings unless they are clearly erroneous but draw our own legal conclusions from facts found or implied in the judgment. *Strait v. Strait*, 223 Ariz. 500, 502, ¶ 6 (App. 2010). We review the court's award of discretionary attorneys' fees for an abuse of discretion. *Heuisler v. Phx. Newspapers*, 168 Ariz. 278, 284 (App. 1991).

### A. 2013 Order

**¶11** Mother contends the superior court failed to enforce the 2013 order. Father asserts that Mother waived this issue by failing to file a cross-petition to enforce the 2013 order and by failing to introduce the order into evidence. We decline to find waiver. Mother raised her argument that Father failed to submit her insurance to providers as a defense in her answer to his petition to enforce the July 2015 order. Moreover, because the 2013 order was entered in this case, there was no need for Mother to introduce it as an exhibit.

**¶12** It is undisputed that Mother had health insurance covering R.Y. during the relevant time periods and that Father did not submit evidence of Mother's insurance covering R.Y. to any provider. The January

2015 order included a provision stating, "Any and all previous Court Orders not expressly modified herein remain in full force and effect." Although the 2013 order required both parties' insurance to be presented to "any major provider," this requirement was extinguished in 2015 when the parties stipulated that Father's Blue Cross Blue Shield insurance must be used for all of R.Y.'s medical appointments. The insurance provision in the January 2015 order therefore modified the insurance provision in the 2013 order.[1] Accordingly, the superior court did not err by concluding Father was not required to submit Mother's insurance to R.Y.'s medical providers.

### B.  2015 Orders

¶13        Mother argues the superior court failed to enforce the January 2015 order, which required Father to provide her with EOBs and communicate with her in advance about R.Y.'s medical providers. She also contends that Father presented no evidence to prove his asserted expenses from April 1, 2017 to July 1, 2018.

¶14        The superior court erred by accepting as accurate all of the amounts listed on Father's spreadsheet attached to Exhibit 20. The July 2015 order states that all receipts for that quarter must "be bundled and sent . . . not later than 15 days following the end of the quarter." At the hearing, Father's counsel represented to the court that Exhibit 20 contained "all the emails and proof of what was bundled and sent to Mother," and that the spreadsheet was "just a summary of what's contained in the exhibit itself." As reflected in the record on appeal, however, Exhibit 20 does not include any receipts or emails to Mother for the last three quarters in 2017 and two quarters in 2018 (from April 1, 2017 to June 30, 2018).[2] Father claimed that Mother owed him approximately $4,180 for expenses incurred in those quarters. The spreadsheet lists amounts paid but with no description for the service provided or if and to whom they were paid. Nor did Father testify

---

[1]        We express no opinion about whether other provisions of the 2013 order remain in effect; we conclude only that the 2015 orders govern the narrow issues presented in this appeal.

[2]        A different document, Exhibit 23, covers the third quarter of 2018 and provides adequate documentation of Father's expenses. Mother argues that one of those expenses, $2,304 for R.Y.'s wisdom tooth extraction surgery, was inadequately documented because Father provided her with a credit card receipt from the oral surgeon. The July 2015 order, however, permits receipts as proof of payment.

about what any of the listed amounts were for. Given this lack of evidentiary support, which Mother pointed out in her proposed contempt order, the court erred by awarding Father $10,208.68. We therefore vacate the judgment and remand to the court to recalculate the judgment excluding the amounts Father claimed from April 1, 2017 to July 1, 2018.[3]

**¶15** Mother is correct that the superior court only considered the July 2015 order in relation to the reimbursement of medical expenses for the minor child. As discussed *supra* ¶ 13, portions of the January 2015 order were still in effect. The January 2015 order stated, "Both parties are entitled to review the insurance [EOBs] to verify actual amounts paid by the other party." The July 2015 order is silent, however, about EOBs. Mother testified that after she received receipts from Father at the end of each quarter, she emailed him to request EOBs so she could submit them to her insurance. But Mother presented no evidence of emails requesting EOBs from Father, except for two emails sent months after Father filed his petition to enforce in January 2018. Furthermore, Mother does not suggest that she ever requested EOBs directly from a provider or Father's insurance company and could not obtain them without Father's assistance.

### C. Attorneys' Fees

**¶16** The superior court awarded Father attorneys' fees and costs pursuant to A.R.S. § 25-324 in the amount of $13,413.29 incurred in filing both of his petitions. Although Mother argues the court abused its discretion by awarding attorneys' fees to Father on his 529 petition because he withdrew it, she cites no authority in support of this argument. The court found that Mother could have provided documentation about the accounts promptly at the time the 529 petition was filed instead of waiting until just before the evidentiary hearing. Doing so would have prevented months of unnecessary litigation. The court further found that Father did not file the 529 petition in bad faith, and he had a reasonable basis for the petition, "given Mother's obligation under the Decree and the lack of information demonstrating her compliance." We find no abuse of discretion in the court's decision to award Father fees for the 529 petition.

---

[3] Although we agree with Mother about the lack of evidence of expenses for five quarters in 2017 and 2018, we reject her argument that the court abused its discretion by rejecting her proposed contempt order, which included provisions that conflicted with the court's determination that Father was not required to submit Mother's insurance card to medical providers.

In light of our decision relating to Father's petition to enforce, however, and because it is not possible to determine from the attorneys' fees judgment or Father's *China Doll* affidavit which fees were incurred for which petition, we vacate the entire award of fees. The court may reconsider the issue of attorneys' fees on remand.

**¶17**      Mother requests attorneys' fees on appeal but cites no supporting authority. We therefore deny her request. *See* ARCAP 21(a)(2) ("A claim for fees under this Rule must specifically state the statute, rule, decisional law, contract, or other authority for an award of attorneys' fees."). She is entitled to taxable costs on appeal, however, as the successful party on appeal under A.R.S. § 12-342(A). Father also requests attorneys' fees on appeal, citing several grounds, including A.R.S. §§ 12-341.01, 12-349, and 25-324. In our discretion, we deny Father's request.

## CONCLUSION

**¶18**      For the foregoing reasons, we accept jurisdiction and grant relief by vacating the superior court's orders finding Mother in contempt and awarding Father attorneys' fees and costs. We remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA