NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, ex rel., DES, TODD JEFFREY MICHAELSON,
*Petitioners/Appellees*,

*v.*

TINA MARIE MICHAELSON, *Respondent/Appellant*.

No. 1 CA-CV 19-0615 FC
FILED 9-29-2020

Appeal from the Superior Court in Maricopa County
No. FC2007-003359
The Honorable Shellie F. Smith, Judge *Pro Tempore*

**VACATED; REMANDED**

COUNSEL

Todd Jeffrey Michaelson, Tucson
*Petitioner/Appellee*

Provident Law PLLC, Scottsdale
By James P. Mueller
*Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Paul J. McMurdie joined.

---

**C R U Z**, Judge:

¶1        Tina Marie Michaelson (Nicholson) ("Mother") appeals the superior court's modification of child support in favor of Todd Jeffrey Michaelson ("Father").  Mother asserts the court erred in calculating her income when it considered the net profit from the sale of her Idaho home.  For the following reasons, we vacate the court's order and remand for further proceedings.

### FACTUAL AND PROCEDURAL HISTORY

¶2        Mother and Father were married in 2001 and have three children together.  They divorced in 2007.  Because Father, a then-unemployed landscape architect, unilaterally moved from Arizona to Washington to seek employment, the court initially awarded Mother sole legal decision making and custody in Arizona.  After considering Mother's Social Security disability income and Father's previous annual income of $50,000, the court granted Mother child support and temporary spousal maintenance.

¶3        Father's unemployment persisted off and on for at least three years, leaving him in arrears essentially from the initial award of child support and spousal maintenance.  Mother filed regular motions to enforce and to hold Father in contempt for failure to pay.  Father was taken into custody three times.

¶4        In 2008, Mother moved to Idaho.  She later married Gabriel Nicholson ("Nicholson") and had another child.  She and Nicholson divorced in 2018, and she receives child support from him.

¶5        In mid-2018, Father gained legal decision making and primary residential custody of the parties' three children in Arizona.  He then filed for a modification of child support in January 2019. Both Mother and Father submitted new affidavits of financial information and the court heard evidence at a combined hearing to determine arrearages, Father's

petition for child support, and how much Father was paying for insurance coverage for the children.

¶6 Father earns $22 an hour. He testified he was remarried, with two additional children, and that he and his wife had custody of five children between them. In the more than six months their children had lived with Father, Mother made little or no financial contribution toward supporting them. Father's arrearages, including interest, were approximately $82,000 at the time of the evidentiary hearing.

¶7 Father provides insurance coverage for the parties' three children at $642.86 a month, and he stipulated to making a monthly $600 arrearage payment to Mother. Father did not dispute Mother's disability or the amount of her disability income but asked the court to consider that in November 2018, Mother sold a home for a net profit of approximately $45,000.

¶8 Mother testified that her income was limited to $529 in Social Security disability, $252 in child support from Nicholson, occasional arrearage payments from Father, and food stamps. Meanwhile, Mother was still receiving child support payments from Father pursuant to the existing support order.

¶9 As to the sale of the Idaho home, the Idaho court ordered Mother to sell the house and to pay her share of the Nicholson community debt with the proceeds. In a post-hearing filing, Mother clarified she received $45,186 from the sale in November 2018 and, from that amount, paid $27,596 toward community debt and "about $2,000 towards attorney's fees and other expenses incurred." Finally, she paid her parents $15,618 "to repay prior loans and to secure housing."

¶10 The court found it could not reconcile Mother's stated monthly income with her stated monthly expenses. The court found "that Mother's testimony regarding her income lacked credibility" and ruled the net proceeds from the house sale was "considered income for calculating child support" along with her disability income. Beginning in April 2019, the court granted Father $1097 in monthly child support and credited Mother with 99 days of parenting time.

¶11 Mother filed a motion to alter or amend the ruling as to her income. After the court denied her motion, Mother filed both a notice of appeal of the child support award and a new petition for modification of child support. Shortly thereafter, the court found Mother in contempt for her failure to pay support. Mother filed an amended appeal that included

the contempt determination. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A) and 12-2101(A)(2).

**DISCUSSION**

**¶12** Mother asserts the court erred in considering the net profit of $45,186 from the sale of her Idaho home for the calculation of child support. Father asserts that income from any source may be considered. We review the superior court's ruling on a petition to modify child support for an abuse of discretion. *Milinovich v. Womack*, 236 Ariz. 612, 615, ¶ 7 (App. 2015). An abuse of discretion occurs when the factual record, viewed in the light most favorable to upholding the decision, does not support the court's ruling, or when the court commits an error of law. *Id.*; *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2 (App. 2005).

I. Sources of Mother's Gross Income

**¶13** Mother first asserts the court erred in ruling that her income, for purposes of child support, included the net profit she received from the sale of the Nicholson marital home.[1] She emphasizes that the sale was a one-time event and that all previous calculations identified Social Security disability as her sole source of income.

**¶14** Gross income for child support purposes is broadly defined to include "income from any source." A.R.S. § 25-320 app. § 5(A) (2019) ("Guidelines"). There is no statutory limitation on items that the "court may consider in determining a parent's 'financial resources.'" *Cummings v. Cummings*, 182 Ariz. 383, 386 (App. 2015). Income under the Guidelines is not limited to reoccurring income, such as wages. However, "[i]ncome

---

[1] Mother disputes Father's characterization of the proceeds as a taxable event or capital gains. Because capital gains are explicitly mentioned in the Guidelines as a potential source of income, we do not undertake any separate analysis based on her claim. *See* Guidelines § 5(A) (advising income "may include, but is not limited to, income from salary wages, . . . [and] capital gains"). The proceeds may still be "income from any source," regardless of how Mother reported them on her tax return. *See Cummings*, 182 Ariz. at 385 ("[G]ross income for child support purposes is not determined by the gross income shown on the parties' income tax returns, but rather on the actual money or cash-like benefits received by the household which [was] available for expenditures.").

from any source which is not continuing or recurring in nature need not necessarily be deemed gross income for child support purposes." Guidelines § 5(A).

**¶15**        Before attributing the sale proceeds to her, Mother suggests that the court should have considered her financial needs or the purpose of a large one-time receipt of funds.  To this end, she cites *Strait v. Strait*, 223 Ariz. 500, 503, ¶ 11 (App. 2010) and *Gallegos v. Gallegos*, 174 Ariz. 18, 21-22 (App. 1992).   In *Strait*, we reversed a determination that a support modification could be based on the father's comprehensive residential mold settlement without consideration of the circumstances under which he acquired the funds and the inherent expenses of remediation and litigation.  223 Ariz. at 503, ¶ 11.  In *Gallegos*, we stated that a parent who received a settlement following a devasting spinal injury should have the benefit of necessary medical expenses being calculated before determining his child support obligation.  174 Ariz. at 21-22.  Mother's one-time event is not comparable to the facts in either *Strait* or *Gallegos*.  Unlike the superior court in *Strait*, the court here did consider evidence and heard testimony regarding the source of the sale proceeds.  The court here also elicited testimony from Mother about her monthly expenses and her regular income; the record shows the court considered Mother's testimony and financial affidavit in calculating the child support award, which the superior court in *Gallegos* did not.  Therefore, the court did not fail to analyze Mother's financial needs or the source of the sale proceeds.

II.     Idaho Court-Ordered Payment

**¶16**        Mother filed a copy of the Nicholson dissolution decree, which ordered that the proceeds of the sale of the marital home "*shall* be applied to pay off" a list of specified community debts. (Emphasis added.) Mother argues that, because the Idaho court ordered that repayment, $27,596 of the proceeds should not be included in her gross income for child support purposes.  The court asked of Mother's counsel: "[I]f you think that I cannot include the $45,000 as income -- I don't know why I can't.  She took the money to pay off her debt.  Why couldn't she use it toward the care of the children?"

**¶17**        We recognize that parents must prioritize the financial support of their children.   "[A] parent's child support obligation is paramount . . . [and a] parent has a legal duty to support his or her biological and adopted children."  *Little v. Little*, 193 Ariz. 518, 521, ¶ 6 (1999); *see* A.R.S. § 25-501(A).   "The obligation to pay child support is primary and other financial obligations are secondary."  A.R.S. § 25-501(C).

"[T]he existence of non-support-related financial obligations is generally not a reason for deviating from the guidelines." Guidelines § 2(B).

¶18          Yet we note that Mother was under an explicit order of the Idaho court to use a portion of the proceeds to repay certain community debts. We expect individuals to abide by court orders, even those issued in other jurisdictions, and the law provides penalties for failure to do so. *See, e.g.*, Ariz. R. Fam. Law P. 89(a), (e) (noting the superior court may "hold the disobedient party in contempt" for failing "to perform any specific act"); *Ong Hing v. Thurston*, 101 Ariz. 92, 98 (1966) ("[C]ivil contempt is the disobeyance of a court order directing an act for the benefit or advantage of the opposing party to the litigation."). When Mother divorced Nicholson, the Idaho court directed: the community real property "shall . . . be sold," "[t]he proceeds of such sale *shall* be applied to pay off in full [specific community debts]," and "[a]ny proceeds remaining *shall* then be split evenly between the parties." (Emphasis added.) The Idaho divorce decree required Mother to apply a portion of the sale proceeds toward the community's debts.

¶19          More importantly, at the time the Idaho court issued the order, no child support order existed against Mother in the instant matter. Mother's *net* proceeds from the Idaho divorce are properly calculated by deducting any amount of marital debt Mother may have paid pursuant to the Idaho court order from the $45,186 gained from the sale of the marital home. The remainder from that calculation is properly characterized as "available for expenditures." *See Cummings*, 182 Ariz. at 385. Accordingly, the court erred when it attributed the entire $45,186 of the sale proceeds to Mother as gross income. We remand for the superior court to make a determination of the amount of the sale proceeds Mother applied to comply with the Idaho court order and to calculate Mother's gross income considering only the net proceeds awarded to Mother after any compliance with the Idaho court order.

III.     Funds Given to Mother's Parents

¶20          Of the remaining proceeds, Mother paid her parents $15,618 "to repay prior loans and to secure housing." She does not argue that she had any court-ordered or contractual obligation to help her parents buy the townhouse. Yet, on appeal, she asserts that the funds given to her parents were essentially "reinvested" to secure future housing and are therefore akin to the funds in *Jenkins v. Jenkins*, 215 Ariz. 35, 37, 39, ¶¶ 4, 17 (App. 2007). By failing to raise this argument in the superior court, Mother has waived it. *See Henderson v. Henderson*, 241 Ariz. 580, 586, ¶ 13 (App. 2017).

**¶21**      Even if Mother had not waived this argument, we would remain unpersuaded.  *Jenkins* was a so-called 1031 property exchange where that parent received a new piece of real property but realized no income.  *See* 215 Ariz. at 37, 39, ¶¶ 4-5, 17; 26 U.S.C. § 1031 (outlining like-kind exchanges of real property and federal income tax consequences).  Mother's situation is inapposite as she did realize a financial return on the sale of the Idaho property.  And as we have previously discussed, her obligation to her children "is paramount" to any obligation to her parents.  *See Little*, 193 Ariz. at 521; *see also* Guidelines § 2(D) ("The 'support' of other persons such as . . . parents is deemed voluntary and is not a reason for an adjustment in the amount of child support determined . . . .").  For these reasons, we find no abuse of discretion by the court in its findings regarding Mother's payments to her parents.

## IV.     Deviation from Guidelines

**¶22**      Finally, Mother argues that consideration of the sale proceeds as part of her income was "unreasonable and unjust."  *See* Guidelines §§ 3, 20(A)(1) (requiring the court to deviate from the Guidelines where application would be "inappropriate or unjust in a particular case"); *Strait*, 223 Ariz. at 503, ¶¶ 10-11.  She points both to her physical disability and the fact that all prior support determinations were calculated using only her disability income.

**¶23**      The superior court could have declined to attribute income to Mother based on her disability, but this decision is within the court's discretion.  *See* Guidelines § 5(E)(1).  We ultimately do not need to decide whether the court's child support order is "inappropriate or unjust" in this case, as we remand the issue to the superior court for a new determination.  On remand, the superior court shall give consideration to the fact that the proceeds Mother realized from the sale of the Idaho marital home are not likely to be "continuing or recurring in nature."  *See* Guidelines § 5(A).

## V.     Attorneys' Fees

**¶24**      Mother requests attorneys' fees and costs on appeal pursuant to A.R.S. § 25-324, which provides that we may order one party to pay the other party's attorneys' fees and costs "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings."

**¶25**      Our review of the record reveals neither party has significant financial resources.  In the exercise of our discretion, we decline the award

of attorneys' fees to either party. We award Mother, as the prevailing party, her costs on appeal following timely compliance with ARCAP 21.

## CONCLUSION

**¶26** For the reasons stated, we vacate the child support orders against Mother and remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA